IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

_____
:
S.R., by and through his next friend, Philip           :
Rosenbauer; THEODORE SMITH, by and                    :
through his next friend, Ashley Maddison;              :
S.H., by and through her next friend, Julia            :
Shmilovich; M.T., by and through his next             :
friend, Ashley Maddison; N.C., by and                 :
through his next friend, Sue Walther;                  :
CHRYSTAL STEWARD, by and through her                  :
next friend, Deborah Fegan, on behalf of              :
themselves and all others similarly situated,         :
                                                       :
                                    Plaintiffs,        :     No. 1:17-cv-02332-JEJ
                                                       :
                        v.                             :     Class Action
                                                       :
PENNSYLVANIA DEPARTMENT OF                            :
HUMAN SERVICES and TERESA  MILLER,                    :
in her capacity as Acting Secretary of the           :
Department of Human Services,                         :
                                                       :
                                    Defendants.        :
_____:

**BRIEF IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Kelly Darr (PA 80909)                      Jeni Hergenreder (PA 208282)
Shanon Levin (PA  49267)                   Disability Rights Pennsylvania
Rachel Mann (PA 49267)                     429 Fourth Avenue, Suite 701
Gabriella Labella (PA 87858)               Pittsburgh, PA 15219-1505
Disability Rights Pennsylvania             (412) 391-5225
1315 Walnut Street, Suite 500
Philadelphia, PA  19107-4705
(215) 238-8070

Counsel for Plaintiffs

## __TABLE OF CONTENTS__

Table of Authorities ................................................................... ii

Factual and Procedural Background .......................................... 1

Question Involved ..................................................................... 8

Argument .................................................................................. 9

I.   Plaintiffs Satisfy the Prerequisites of Federal Rule of
     Civil Procedure 23(a) ......................................................... 9

     A.   The Proposed Class Is So Numerous that Joinder
          of All Members Is Impracticable ..................................... 9

     B.   There Are Questions of Law and Fact Common to
          Plaintiffs and the Class ................................................ 12

     C.   Plaintiffs' Claims Are Typical of Those of Class
          Members ...................................................................... 18

     D.   The Plaintiffs Will Fairly and Adequately Represent
          the Class ...................................................................... 20

II.  This Action Is Maintainable as a Class Action Under
     Rule 23(b)(2) Since Defendants Have Acted or Refused
     to Act on Grounds Generally Applicable to the Class ......... 22

Conclusion .............................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997) ........................................................................ 22

*Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*,
    568 U.S. 455 (2013) ........................................................................ 13

*Am. Sales Co., Inc. v. SmithKline Beecham Corp.*,
    274 F.R.D. 127 (E.D. Pa. 2010) ...................................................... 11

*Anderson v. Dep't of Public Welfare*,
    1 F. Supp. 2d 456 (E.D. Pa. 1998)................................................... 11

*Baby Neal ex rel. Kanter v. Casey*,
    43 F.3d 48 (3d Cir. 1994)........................................ 12, 17, 18, 19, 23

*Benjamin v. Dep't of Public Welfare*,
    768 F. Supp. 2d 747 (M.D. Pa. 2011) .............................................. 22

*Chiang v. Veneman*,
    385 F.3d 256 (3d Cir. 2004)............................................................. 12

*Connor B. v. Patrick*,
    278 F.R.D. 30 (D. Mass. 2011) .................................................. 16, 23

*Cureton v. Nat'l Collegiate Athletic Ass'n*,
    No. 97-131, 1999 WL 447313 (E.D. Pa. July 1, 1999) ................ 9, 20

*Frederick L. v. Dep't of Public Welfare*,
    364 F.3d 487 (3d Cir. 2004).......................................................21, 23

*Hagan v. Rogers*,
    570 F.3d 146 (3d Cir. 2009)............................................................. 18

*Harry M. v. Dep't of Public Welfare*,
    No. 1:10-cv-00922, 2013 WL 4500051 (M.D. Pa. Aug. 21, 2013) .... 21

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004)............................................................. 19

*Kenneth R. ex rel. Tri-County CAP, Inc./GS v. Hassan*,
   293 F.R.D. 254 (D.N.H. 2013), *app. dismissed*,
   No. 13-8030 (1st Cir. Mar. 14, 2014) ................................... 17, 20, 23

*Kerrigan v. Phila. Bd. of Election*,
   248 F.R.D. 470 (E.D. Pa. 2008)....................................................... 10

*Kirk T. v. Houstoun*,
   No. 99-3253, 2000 WL 830731 (E.D. Pa. 2000)............................... 22

*M.D. ex rel. Stuckenberg v. Perry*,
   294 F.R.D. 7 (S.D. Tex.), *leave to app. dismissed*,
   547 F. App'x 543 (5th Cir. 2013)............................... 14, 16, 17, 20, 23

*Metts v. Houstoun*,
   No. 97-4123, 1997 WL 688804 (E.D. Pa. Oct. 24, 1997) ................. 21

*N.B. v. Hamos*,
   26 F. Supp. 3d 756 (N.D. Ill. 2014) ................................ 11, 16, 20, 23

*New Directions Treatment Services v. City of Reading*,
   490 F.3d 293 (3d Cir. 2007)....................................................... 20, 21

*O.B. v. Norwood*,
   170 F. Supp. 3d 1186 (N.D. Ill.), *aff'd*, 838 F.3d
   837 (7th Cir. 2016)............................................................................. 3

*Pashby v. Cansler*,
   279 F.R.D. 347 (E.D.N.C. 2011), *aff'd on other grounds*
   *sub nom. Pashby v. Delia*, 709 F.3d 307 (4th Cir. 2013)................. 17

*Pennsylvania Dep't of Public Welfare v. U.S. Dep't*
*of Health & Human Services*,
   647 F.3d 506 (3d Cir. 2011)............................................................... 2

*Pennsylvania Pharmacists Ass'n v. Houstoun*,
    283 F.3d 531 (3d Cir.) (en banc), *cert. denied*,
    537 U.S. 821 (2002) ............................................................................2

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993)............................................................. 11

*Rodriguez v. Nat'l City Bank*,
    726 F.3d 372 (3d Cir. 2013)....................................................... 12, 13

*S.D. ex rel. Dickson v. Hood*,
    391 F.3d 581 (5th Cir. 2004)..............................................................2

*Serventi v. Bucks Technical High School*,
    225 F.R.D. 159 (E.D. Pa. 2004)................................................. 10, 22

*Shelton v. Beldsoe*,
    775 F.3d 554 (3d Cir. 2015)......................................................... 9, 11

*Soles v. Zartman Constr., Inc.*,
    No. 4:13-cv-29, 2014 WL 3557197 (M.D. Pa. July 18, 2014) ..... 10, 13

*Sonny O. ex rel. Maria G. v. Dallas*,
    No. 1:14-cv-1110, 2016 WL 3197773 (M.D. Pa. June 9, 2016)........ 21

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001), *cert. denied*, 536 U.S.
    958 (2002) .......................................................................... 10, 19, 23

*Tavares v. S-L Dist. Co., Inc.*,
    No. 1:13-cv-1313, 2016 WL 1743268 (M.D. Pa. May 2, 2016)......... 19

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................. 12, 16

*Williams v. Jani-King of Philadelphia, Inc.*,
    837 F.3d 314 (3d Cir. 2016).............................................................13

## Statutes, Regulations, and Rules

29 U.S.C. § 794 ................................................................................8

42 U.S.C. § 675(5)(A) .......................................................................2

42 U.S.C. § 1396a(a)(8).....................................................................7

42 U.S.C. § 1396a(a)(10)(A)...........................................................2, 7

42 U.S.C. § 1396d(a) ........................................................................3

42 U.S.C. § 1396d(a)(4)(B)............................................................2, 7

42 U.S.C. § 1396d(a)(13)...................................................................3

42 U.S.C. § 1396d(r)(5) .....................................................................2

42 U.S.C. § 1983 ...............................................................................7

42 U.S.C. §§ 12131-12134 ................................................................7

Fed. R. Civ. P. 23(a) .........................................................................9

Fed. R. Civ. P. 23(a)(1)............................................................9, 10, 12

Fed. R. Civ. P. 23(a)(2)...........................................................12, 14, 18

Fed. R. Civ. P. 23(a)(3)...............................................................18, 20

Fed. R. Civ. P. 23(a)(4)...............................................................20, 22

Fed. R. Civ. P. 23(b)(2) ...........................................................11, 22, 23

62 P.S. § 701 ...................................................................................1

62 P.S. § 2305 .................................................................................1

55 Pa. Code § 3130.12 .....................................................................1

v

**Miscellaneous**

Dep't of Human Services, *Former Foster Youth*............................................7

Dep't of Human Services, *Medical Assistance Eligibility Handbook* ......................................................................................7

*Governor's Exec. Budget 2017-18* (Feb. 2017).....................................7, 10

Medicaid and CHIP Payment and Access Comm'n, *Report to Congress on Medicaid and CHIP: The Intersection of Medicaid and Child Welfare* (June 2015) ....................................................................3

Nat'l Conference of State Legislatures, *Mental Health and Foster Care* ..........................................................................................7, 11

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are six youths from Philadelphia, Beaver, and York Counties ranging in age from 10 to 19 who each have multiple mental health disabilities, including post-traumatic stress disorder ("PTSD"), bipolar disorder, impulse control disorder, oppositional defiant disorder, and attention deficit hyperactivity disorder.  As dependent children and youth with disabilities, Plaintiffs are or were effectively in the custody and control of Pennsylvania's Child Welfare system and entitled to receive services from them through age 21.  *See* 42 Pa. Cons. Stat. Ann. § 6302 (definition of child).

Defendants Department of Human Services and Acting Secretary Miller (collectively, "DHS"), are responsible to administer the Child Welfare system and assure the provision of adequate Child Welfare services to Pennsylvania youth.  62 P.S. § 701.  DHS supervises county children and youth services agencies' provision of Child Welfare services and is responsible to regulate, supervise, and monitor the administration of Child Welfare Services, including:  providing adequate substitute care for children who cannot remain in their homes; providing service and care court-ordered for delinquent and dependent youth; and providing services to overcome problems with delinquency or dependency.  62 P.S. § 2305; 55 Pa. Code § 3130.12.  Under federal law, DHS must assure that each

dependent child has a case plan designed to achieve placement in a safe setting that is the least restrictive, most-family like, and most appropriate consistent with his or her best interests and special needs.  42 U.S.C. § 675(5)(A).

Plaintiffs also are and have been eligible to receive services through the Medical Assistance ("Medicaid") program.  Pennsylvania participates in the joint federal-state Medicaid program, which is administered by DHS (formerly the Department of Public Welfare).  *Pennsylvania, Dep't of Public Welfare v. U.S. Dep't of Health & Human Services*, 647 F.3d 506, 508 (3d Cir. 2011).  As a participating Medicaid state, Pennsylvania is required by federal law to provide certain mandatory services.  *See Pennsylvania Pharmacists Ass'n v. Houstoun*, 283 F.3d 531, 533 (3d Cir.) (en banc), *cert. denied*, 537 U.S. 821 (2002).  Mandatory Medicaid services include Early and Periodic Screening, Diagnostic and Treatment ("EPSDT") for eligible individuals under the age of 21.  42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)(4)(B); *S.D. ex rel. Dickson v. Hood*, 391 F.3d 581, 586 (5th Cir. 2004).  EPSDT encompasses all "necessary health care, diagnostic services, treatment, and other measures described in section [42 U.S.C. § 1396d(a)] to correct or ameliorate defects and physical and mental illnesses and conditions."  42 U.S.C. § 1396d(r)(5).  Thus, Title XIX's

2

EPSDT mandate requires states to provide eligible children with any

category of care enumerated in 42 U.S.C. § 1396d(a) if it is medically

necessary.  *See O.B. v. Norwood*, 170 F. Supp. 3d 1186, 1199 n.8 (N.D.

Ill.), *aff'd*, 838 F.3d 837 (7th Cir. 2016).

One of the types of services encompassed in 42 U.S.C. § 1396d(a) –

and thus included in the EPSDT mandate – is:

> any medical or remedial services (provided in a facility, a
> home, or other setting) recommended by a physician or
> other licensed practitioner of the healing arts within the
> scope of their practice under State law, for the maximum
> reduction of physical or mental disability and restoration of
> an individual to the best possible functional level.

42 U.S.C. § 1396d(a)(13).  EPSDT's broad scope thus entitles children to

receive an array of medically necessary behavioral health services,

including:  case management; outpatient treatment; behavior management

consultation and training; psychosocial rehabilitation; wraparound services;

therapy (including group therapy, activity therapy, and multi-systemic

therapy); peer services; crisis intervention and stabilization; respite;

therapeutic group homes; therapeutic foster care; supported housing;

psychiatric residential treatment facilities ("RTFs"); and inpatient psychiatric

hospitalization.  *See* Medicaid and CHIP Payment and Access Commission

(MACPAC), *Report to Congress on Medicaid and CHIP: The Intersection of*

*Medicaid and Child Welfare* at 70 (June 2015) (Exh. 1).

As dependent, Medicaid-eligible youth with mental health disabilities, Plaintiffs are entitled to an array of mental health services – including services in the most integrated settings appropriate to meet their needs – through both DHS's Child Welfare and Medicaid systems.  Yet, Plaintiffs have been unable to access Child Welfare services, medically necessary mental health services, and/or services in the most integrated settings appropriate to their needs.  Instead, they remain unnecessarily confined in youth detention facilities, private psychiatric hospitals, or RTFs. Specifically:

- S.R., who is 10 years old, has been in a RTF since he was only seven.  S.R. has stated that he just "wants to find a family" and his permanency goal is adoption.  Although the RTF has concluded that he can gain no further benefit from staying and his county Child Welfare agency has noted his remarkable progress, S.R. remains at the RTF.  No alternative, more integrated placement has been identified for him via either the Child Welfare or Medicaid system.  To the contrary, the only alternative currently under consideration is transfer to another, possibly out-of-state RTF.

4

■    S.H., who is 15, has been in the dependency system since age
       10.  A psychiatrist has recommended that she be placed in a
       RTF and receive trauma-informed therapy.  Instead, she was
       placed in a youth detention center in October 2016 because
       DHS's Child Welfare and Medicaid systems failed to identify
       appropriate mental health services.  She remained there until
       December 19, 2017 when she was transferred to an out-of-
       state facility.

■    N.C., who is 15, was adjudicated dependent at age five.
       Between December 2016 and December 2017, N.C. primarily
       lived in youth detention facilities because the Child Welfare and
       Medicaid systems failed to find appropriate services in more
       integrated settings that can provide him with mental health
       services.  Lacking any appropriate alternative, N.C. was sent to
       an out-of-state facility on December 13, 2017.

■    M.T., who is 16, has been adjudicated dependent for years.
       Since April 2017, M.T. has been placed in the Philadelphia
       youth detention facility without appropriate mental health
       services.  Although a psychiatrist determined in August 2017
       that M.T. needs an RTF placement with appropriate services,

5

DHS's Child Welfare and Medicaid system have been unable to provide services or a placement for him.

■  Chrystal Steward, who is 19, was adjudicated dependent in 2008.  Chrystal was admitted to an acute inpatient psychiatric hospital in November 2016.  Although her doctors determined that she was ready for discharge within weeks of her admission, she remains unnecessarily institutionalized in that facility because DHS's Child Welfare and Medicaid systems have been unable to identify an alternative placement and services for her.

■  Teddy Smith, who is 18, was adjudicated dependent at 17 and placed in an RTF.  After he ran away, he was transferred to a youth detention center in Philadelphia in March 2017 and his dependency proceeding was terminated at the behest of the county Child Welfare agency.  Teddy had been recommended for placement in a RTF and to receive trauma-informed care in a structured residential setting.  Neither happened.  Instead, he was sent to a youth detention facility in Perry County where he was assaulted by staff, unjustly imprisoned, and ultimately

returned to the Philadelphia youth detention facility where he

remained without appropriate mental health treatment.

Plaintiffs' situations are not unique.  There are more than 26,000

dependent children and youth in out-of-home placements including about

2,800 in in-state institutional care programs and 170 in out-of-state

programs.  *Governor's Exec. Budget 2017-18* at E23-57 (Feb. 2017) (Exh.

2).  Almost all of these dependent children and youth are eligible for

Medicaid benefits.[1]  A significant portion have mental health disabilities,

including PTSD, depression, and anxiety.  *See* Nat'l Conference of State

Legislatures, *Mental Health and Foster Care* (Exh. 5).

Plaintiffs thus filed this action on behalf of themselves and other

similarly situated dependent youth with mental health disabilities.  Plaintiffs

allege that DHS violates 42 U.S.C. § 1983 and Title XIX by denying their

entitlement to an array of Medicaid behavioral health services required by

the EPSDT mandate, 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)(4)(B), and

failing to assure that such Medicaid services are provided with reasonable

promptness in accordance with 42 U.S.C. § 1396a(a)(8).  Compl. ¶¶ 163-

---

[1]  In Pennsylvania, children under 18 with an SSI-level disability are eligible for Medicaid regardless of their parents' income.  *See* DHS, *Medical Assistance Eligibility Handbook* Ch. 315 (Exh. 3).  Dependent youth between ages 18 and 21 will likely remain Medicaid-eligible.  *See* DHS, *Former Foster Youth* (Exh. 4).

172.  Plaintiffs also allege that DHS violates Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12134, and Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794, by, *inter alia*, failing to provide them with mental health services in the most integrated setting appropriate to their needs and by failing to assure their equal access to other child welfare services to achieve stability and permanency based on their disabilities or the severity of their disabilities.  Compl. ¶¶ 173-184.  Plaintiffs seek solely declaratory and injunctive relief.  Compl. at 41-42.

It is anticipated that Defendants will not contest the Plaintiffs' dependency status, mental health disabilities, or the details of their histories and current situation.  In the event that certain allegations that form the basis of this Motion are contested, Plaintiffs request the opportunity to conduct class-related discovery and/or present evidence at a hearing or additional submissions to the Court for the purposes of resolving this Motion.

## QUESTION INVOLVED

Should this case be certified to proceed as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) on behalf of Pennsylvania children and youth under the age of 21 who, now or in the future, are adjudicated dependent and have diagnosed mental health disabilities?

8

# ARGUMENT

## I.  PLAINTIFFS SATISFY THE PREREQUISITES
## OF FEDERAL RULE OF CIVIL PROCEDURE 23(a).

Federal Rule of Civil Procedure 23(a) establishes four requirements, each of which must be satisfied for the maintenance of a class action:  (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be a question of law or fact common to the class; (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; and (4) the representative parties must fairly and adequately protect the interests of the class.  *See Shelton v. Bledsoe*, 775 F.3d 554, 559 (3d Cir. 2015).  This case satisfies each of these requirements.

### A.  The Proposed Class Is So Numerous
### That Joinder of All Members Is Impracticable.

Rule 23(a)(1) requires that the class must be sufficiently large that joinder of all class members would be impracticable.  "Impracticability of joinder does not mean impossibility, but rather that the difficulty or inconvenience of joining all members of the putative class calls for class certification."  *Cureton v. Nat'l Collegiate Athletic Ass'n*, No. 97-131, 1999 WL 447313 at *5 (E.D. Pa. July 1, 1999).

9

As the Third Circuit Court of Appeals has written:  "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."  *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001), *cert. denied*, 536 U.S. 958 (2002); *accord Soles v. Zartman Constr., Inc.*, No. 4:13-cv-29, 2014 WL 3557197, at *5 (M.D. Pa. July 18, 2014); *see also Serventi v. Bucks Technical High School*, 225 F.R.D. 159, 165 (E.D. Pa. 2004) (evidence of at least 47 class members satisfied numerosity requirement).  Rule 23 "does not require 'any particular number or require that joinder of all members be impossible, so long as a good faith estimate of the number of class members is provided.'"  *Kerrigan v. Phila. Bd. of Election*, 248 F.R.D. 470, 474 (E.D. Pa. 2008) (citation omitted).

This case readily satisfies Rule 23(a)'s numerosity requirement. There are 23,500 dependent youths in Pennsylvania who live in community residential programs (such as foster care and group homes) and nearly 3,000 additional dependent youths in Pennsylvania who live in institutional programs in-state or out-of-state. *Governor's Exec. Budget 2017-18* at E23-57.  Statistics indicate that among all youths in foster care (including those who are not institutionalized) there is a large number who have

10

mental health issues, including 21.5% with PTSD and 15.3% with a major depressive episode. *Mental Health and Foster Care* at 1. Thus, there are thousands of dependent children with mental health disabilities. This evidence is more than sufficient to establish numerosity. *See Anderson v. Dep't of Public Welfare*, 1 F. Supp. 2d 456, 461 (E.D. Pa. 1998) ("Statistics tending to show that joinder would be impracticable may be sufficient to satisfy Rule 23(a)(1).").[2]

Factors in addition to class size – including geographic dispersion of the class members, their ability to pursue individual cases, the expediency of joinder, and the practicality of multiple lawsuits – can also militate in favor of certification. *See Am. Sales Co., Inc. v. SmithKline Beecham Corp.,* 274 F.R.D. 127, 133 (E.D. Pa. 2010); *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993). Here, the putative class members are dispersed throughout Pennsylvania and, given their age, dependency, and mental health disabilities, they are exceedingly unlikely to have the resources and ability to pursue individual federal lawsuits to enforce their rights. *See N.B. v. Hamos*, 26 F. Supp. 3d 756, 770 (N.D. Ill. 2014). These factors,

---

[2] In a Rule 23(b)(2) class for declaratory and injunctive relief, such as this, it is not necessary that each class member be ascertainable. *Shelton*, 775 F.3d at 565.

combined with the large size of the class, make joinder impracticable and is sufficient to satisfy Rule 23(a)(1).

### B.  There Are Questions of Law and Fact Common to Plaintiffs and the Class.

Rule 23(a)(2) requires questions of law or fact common to the class. To satisfy the commonality requirement, a class's claims must depend upon a "common contention."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  The common contention "must be of such a nature that it is capable of classwide resolution -- which means that its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*  The Supreme Court acknowledged "that for purposes of Rule 23(a)(2), '[e]ven a single [common] question' will do[.]"  *Id.* at 359; *accord Chiang v. Veneman*, 385 F.3d 256, 265 (3d Cir. 2004); *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).

As the Third Circuit has recognized, the bar for commonality under Rule 23(a)(2) is "not a high one."  *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013).

> We have acknowledged commonality to be present even when not all plaintiffs suffered an actual injury, [citation omitted], when plaintiffs did not bring identical claims, [citation omitted], and, most dramatically, when some plaintiffs' claims may not have been legally viable, [citation omitted].  In reaching those conclusions, we explained that the focus of the commonality inquiry is not on the strength

12

of each plaintiff's claim, but instead is "on whether the defendant's conduct was common as to all of the class members." [citations omitted]. In other words, *there may be many legal and factual differences among the members of the class, as long as all were subjected to the same harmful conduct by the defendant. Baby Neal*, 43 F.3d at 56.

*Id.* at 382-83 (emphasis added); *accord Soles*, 2014 WL 3557197, at *5.[3]

This case presents the following questions of fact or law that are common to Plaintiffs and all class members:

- whether DHS provides a sufficient array of services and placements through the Child Welfare system to meet the needs of putative class members (e.g., therapeutic foster care; respite; community living arrangements);

- whether DHS's Medicaid program fails to provide putative class members with medically necessary mental health services (e.g., therapeutic foster care; therapies; behavioral health rehabilitation services; supported housing; peer supports; crisis

---

[3] At the class certification stage, the Court may not inquire into the merits of the case unless it is relevant to determining whether the standards for class certification are satisfied. *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465-66 (2013*); Williams v. Jani–King of Philadelphia, Inc.*, 837 F.3d 314, 322 (3d Cir. 2016).

13

services; and in-state RTFs) to which they are entitled and do
so with reasonable promptness;

■    whether DHS has a policy and/or practice of failing to imple-
ment recommendations by treatment professionals that putative
class members receive particular Child Welfare and/or
Medicaid services;[4]

■    whether DHS has a policy and/or practice of leaving putative
class members in RTFs past the point that they are ready for
discharge due to the lack of alternative, less restrictive
placements;

■    whether DHS has a policy and/or practice of recommending to
dependency or delinquency courts that putative class members
remain in youth detention centers due to the lack of alternative,
less restrictive placements;

---

[4]    In assessing commonality under Rule 23(a)(2), courts can
consider whether common government policies or practices exist.  This
need not be a formal policy, but can be based on deliberate indifference to
respond to a known risk or violation of law.  *See M.D. ex rel. Stuckenberg
v. Perry*, 294 F.R.D.7, 26 (S.D. Tex.), *leave to appeal dismissed*, 547 F.
App'x 543 (5th Cir. 2013).

14

■      whether DHS has a policy and/or practice of entering into
       contracts to send dependent youth with mental health disabili-
       ties to out-of-state institutions due to the lack of alternative in-
       state placements and services;

■      whether DHS's policies and/or practices discriminate against
       dependent youth with mental health disabilities by denying
       them equal access to an array of appropriate Child Welfare and
       Medicaid services that are available to dependent youth without
       such disabilities;

■      whether DHS's policies and/or practices discriminate against
       dependent youth with mental health disabilities by failing to
       provide them with mental health services through the Child
       Welfare and/or Medicaid systems in the most integrated
       settings appropriate to meet their needs; and

■      whether the previously-described policies and/or practices
       violate Title XIX and/or the ADA and RA.

Courts have held that Rule 23(a)(2)'s common question requirement is
satisfied in cases involving the provision of EPSDT behavioral health
services, in cases challenging policies and practices in child welfare

systems, and in cases involving the right of people with disabilities to receive services in the most integrated settings.

In *N.B.*, the court held that there were common questions of law and fact in a case alleging that the state failed to provide medically necessary EPSDT mental health services, violating Title XIX, the ADA, and the RA because the lack of community-based mental health services resulted in putative class members' unnecessary institutionalization. *N.B.*, 26 F. Supp. 3d at 771-74. In doing so, the court noted that the issue of whether the state funds services in institutional, rather than community-based settings despite the EPSDT mandate, raises a common systemic failure applicable to all class members. *Id.* at 772.

In *Connor B. v. Patrick*, 278 F.R.D. 30 (D. Mass. 2011), the court determined that common questions existed to satisfy Rule 23(a)(2) in a case on behalf of youth in the state's child welfare systems and refused to decertify the class following *Wal-Mart*, holding that the "specific and overarching systemic deficiencies" caused class members harm. *Id.* at 34. Similarly, in *M.D.*, the court found Rule 23(a)(2) was met in a case involving constitutional challenges to the state's child welfare system with respect to both a general foster care class and most of the delineated subclasses. *M.D.*, 294 F.R.D. at 38-45, 48-55, 55-58, 59-61. Among other things, the

*M.D.* Court held there to be common questions relating to an insufficient array of placements. *Id.* at 53-55.

Finally, courts frequently have determined that common questions exist in cases filed to enforce the ADA's and RA's integration mandates, requiring states to provide disability services in the most integrated settings appropriate. For instance, in *Kenneth R. ex rel. Tri-County CAP, Inc./GS v. Hassan*, 293 F.R.D. 254, 267-70 (D.N.H. 2013), *app. dismissed*, No. 13-8038 (1st Cir. Mar. 14, 2014), the court held there were common questions satisfying Rule 23(a)(2) in a lawsuit challenging New Hampshire's reliance on the provision of institutional care to treat mental illness. *See also Pashby v. Cansler*, 279 F.R.D. 347, 353 (E.D.N.C. 2011) (holding common questions exist in case challenging state's adoption of stricter eligibility requirements for personal care services that threatened class members with potential institutionalization), *aff'd on other grounds sub nom. Pashby v. Delia*, 709 F.3d 307 (4th Cir. 2013).

These rulings are consistent with the law in this Circuit. In the seminal case of *Baby Neal* which involved statutory and constitutional challenges to Philadelphia's child welfare system, the Third Circuit wrote: "Courts appear to consider 'common' such challenges based on alleged violations of statutory standards." *Baby Neal*, 43 F.3d at 56-57. Further,

"because they do not involve an individualized inquiry for the determination of damage awards, injunctive actions 'by their very nature often present common questions satisfying Rule 23(a)(2).'" *Id.* at 57 (citation omitted). The nature of the statutory claims in this case and the type of relief sought (*i.e.*, only declaratory and injunctive relief) buttress the conclusion that this case satisfies the commonality requirement of Rule 23(a)(2).

## C. **Plaintiffs' Claims Are Typical of Those of Class Members.**

Plaintiffs also satisfy Rule 23(a)(3)'s typicality requirement. "Typicality entails an inquiry [into] whether 'the named plaintiff's individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of the other class members will perforce be based.'" *Baby Neal*, 43 F.3d at 57-58 (citation omitted). "'Rule 23 does not require that the representative plaintiff have endured precisely the same injuries that have been sustained by class members,'" as long as the harm is common to the class and the named plaintiffs demonstrate a personal interest or a real and immediate threat of injury. *Hagan v. Rogers*, 570 F.3d 146, 158 (3d Cir. 2009) (citation omitted). In other words, "[i]f the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is

established regardless of factual differences." *Tavares v. S-L Dist. Co., Inc.*, No. 1:13-cv-1313, 2016 WL 1743268, at *3 (M.D. Pa. May 2, 2016).

Moreover, "[t]ypicality, as with commonality, does not require 'that all putative class members share identical claims.'" *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 531-32 (3d Cir. 2004) (citation omitted). Claims which challenge conduct that affects the named plaintiff as well as the class members, such as the claims in the instant case, "usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims .... Actions requesting declaratory and injunctive relief to remedy conduct directed at the class clearly fit this mold." *Baby Neal*, 43 F.3d at 58; *accord Stewart v. Abraham*, 275 F.3d at 227.

Plaintiffs' and the putative class members' claims in this case arise from the same policies and practices, *e.g.*, failing to assure a sufficient array of services and placements through the Child Welfare system; failing to assure timely access to medically necessary EPSDT mental health services; and failing to promptly move class members from institutional to more integrated placements when recommended by their treatment profes-sionals. Plaintiffs' and putative class members' claims are also based on the same legal theories, *i.e.*, violation of Title XIX's entitlement and reasonable promptness provisions and the ADA's integration and non-

19

discrimination requirements.  Plaintiffs' claims for declaratory and injunctive

relief to remedy Defendants' violations of federal law are typical of those of

putative class members since they are "'based on patterns and practices

not special or unique to [plaintiffs,] [and] a significant number of other

members of the class have been similarly victimized by the same patterns

or practices.'"  *Cureton*, 1999 WL 447313 at *8 (quoting *Weiss v. York

Hosp.*, 745 F.2d 786, 809 n.36 (3d Cir. 1984)); *see also N.B.*, 26 F. Supp.

3d at 771 (typicality satisfied in EPSDT behavioral health case); *M.D.*, 294

F.R.D. at 46 (typicality satisfied in child welfare case); *Kenneth R.,* 293

F.R.D. at 270 (typicality satisfied in challenge to state's failure to provide

mental health treatment in the community).  Rule 23(a)(3) is therefore

satisfied.

### D.  The Plaintiffs Will Fairly and Adequately Represent the Interests of the Class.

Rule 23(a)(4) requires that a named representative fairly and

adequately protect the interests of the class.  This requirement has two

components to assure that absent class members' interests are diligently

pursued:  (1) the interests of the named class representatives are not in

conflict with other class members, and (2) the plaintiffs' attorneys are

qualified, experienced, and generally able to conduct the litigation.  *New*

*Directions Treatment Services v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007).

Here, Plaintiffs and the putative class members experience the same harm (*i.e.*, lack of access to EPSDT and Child Welfare services that they need for their mental health diagnoses and that are provided in the most integrated setting appropriate for them) and seek the same relief (*i.e.*, declaratory and injunctive relief to end DHS's violations of federal law). "Because the plaintiffs seek the same injunctive relief as all members of the class, the court 'can find no potential for conflict between the claims of the complainants and those of the class as a whole.'" *Metts v. Houstoun*, No. 97-4123,1997 WL 688804, at *4 (E.D. Pa. Oct. 24, 1997).

Plaintiffs' counsel are well qualified to represent the class. Plaintiffs' counsel are attorneys from Disability Rights Pennsylvania ("DRP"), the organization designated by the Commonwealth of Pennsylvania pursuant to federal law to protect the rights of and advocate for individuals with mental illness. *See* Darr Decl. ¶ 2 (Exh. 6). DRP has substantial experience in disability rights and class action litigation in federal courts. *See id.* ¶¶ 3-5; *Frederick L. v. Dep't of Public Welfare,* 364 F.3d 487 (3d Cir. 2005); *Sonny O. ex rel. Maria G. v. Dallas*, No. 1:14-cv-1110, 2016 WL 3197773 (M.D. Pa. June 9, 2016); *Harry M. v. Dep't of Public* Welfare, No. 1:10-cv-

21

00922, 2013 WL 4500051 (M.D. Pa. Aug. 21, 2013); *Benjamin v. Dep't of Public Welfare,* 768 F. Supp. 2d 747 (M.D. Pa. 2011); *Serventi v. Bucks Technical High School*, 225 F.R.D. 159 (E.D. Pa. 2004); *Kirk T. v. Houstoun*, No. 99-3253, 2000 WL 830731 (E.D. Pa. 2000).  Accordingly, Rule 23(a)(4) is satisfied.[5]

## II.  THIS ACTION IS MAINTAINABLE AS A CLASS ACTION UNDER RULE 23(b)(2) SINCE DEFENDANTS HAVE ACTED OR REFUSED TO ACT ON GROUNDS GENERALLY APPLICABLE TO THE CLASS.

In addition to meeting the requirements of Rule 23(a), a party seeking class certification also must establish that the case falls into at least one of the three Rule 23(b) categories.  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997).  Rule 23(b)(2) allows a class action to be maintained if:  "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunc-tive relief or corresponding declaratory relief with respect to the class as a whole[.]"  Fed. R. Civ. P. 23(b)(2).  "[I]t is generally recognized that civil

---

[5] Rule 23(g)(1)(A) indicates that the Court should consider counsel's experience in handling similar litigation, knowledge of applicable law, work to investigate the potential claims, and resources it can commit in appointing class counsel.  Plaintiffs' counsel not only have the requisite experience and knowledge to pursue these claims, but they have also carefully investigated them (including interviewing dependent youths with mental health diagnoses at youth detention centers, psychiatric hospitals, and other institutions), and counsel have the resources necessary to conduct the litigation.  Darr Decl. ¶¶ 6-7.

rights actions seeking relief on behalf of classes ... normally meet the requirements of Rule 23(b)(2)." *Stewart*, 275 F.3d at 228; *accord Baby Neal*, 43 F.3d at 59.

This action readily meets the requirements of Rule 23(b)(2). Plaintiffs seek only declaratory and injunctive relief to assure that Defendants comply with their obligations under Title XIX, the ADA, and the RA. Similar cases to enforce these statutory mandates have been certified under Rule 23(b)(2). *See, e.g.*, *Frederick L.*, 364 F.3d at 489 (noting certification of class of Norristown State Hospital residents who brought ADA and RA claims to challenge their unnecessary institutionalization); *N.B.*, 26 F. Supp. 3d at 776 (certifying class of Medicaid-eligible youth under age 21 with mental health diagnoses who have been recommended for community-based services); *M.D.*, 294 F.R.D. at 67 (certifying class and subclasses of foster care youth); *Kenneth R.,* 293 F.R.D. at 271-72 (certifying class in ADA and RA case challenging failure to provide mental health treatment in the community); *Connor B.*, 278 F.R.D. at 31 (certifying class of foster care youth). This case, too, presents a paradigmatic lawsuit for class certification.

## CONCLUSION

For all the reasons set forth above, Plaintiffs respectfully request that the Court certify this case to proceed as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b).

Respectfully submitted,


Dated:  December 22, 2017    By:    /s/ Kelly Darr
Kelly Darr (PA 80909)
Shanon Levin (PA 86040)
Rachel Mann (PA 49267)
Gabriella Labella (PA 87858)
Disability Rights Pennsylvania
1315 Walnut Street, Suite 500
Philadelphia, PA  19107-4705
(215) 238-8070
(215) 772-3126
kdarr@disabilityrightspa.org

and

Jeni Hergenreder (PA 208282)
Disability Rights Pennsylvania
429 Fourth Avenue, Suite 701
Pittsburgh, PA  15219-1505
(412) 391-5225
(412) 467-8940 (fax)

Counsel for Plaintiffs

## <u>LOCAL RULE 7.8(b)(2) CERTIFICATE</u>

I certify under penalty of perjury that the Brief in Support of Plaintiffs'

Motion for Class Certification complies with Local Rule 7.8(b)(2) of this

Court because, based on the word processing system used to prepare the

Brief, Word 2013, the Brief contains 4,835 words (excluding the Table of

Contents and Table of Citations).


Dated:  December 22, 2017          /s/ Kelly Darr_____
                                   Kelly Darr

## **CERTIFICATE OF SERVICE**

I, Kelly Darr, hereby certify that a true and correct copy of the Brief

and Exhibits in Support of Plaintiffs' Motion for Class Certification were

served on the following by first-class mail, postage prepaid on this 22nd

day of December, 2017:

Teresa Miller, Acting Secretary
Department of Human Services
333 Health & Welfare Building
Harrisburg, PA  17120

Doris M. Leisch, General Counsel
Department of Human Services
3rd Floor West, Health & Welfare Building
Harrisburg, PA  17120

/s/ Kelly Darr
Kelly Darr