## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **S.R., by and through his next friend, Philip Rosenbauer; THEODORE SMITH, by and through his next friend, Ashley Maddison; S.H., by and through her next friend, Julia Shmilovich; M.T., by and through his next friend, Ashley Maddison; N.C., by and through his next friend, Sue Walther; CHRYSTAL STEWARD, by and through her next friend, Deborah Fegan, on behalf of themselves and all others similarly situated,** | : : : : : : : : : : | **No. 1:17-cv-02332-JEJ** |
| | : | |
| | : | **(Judge John E. Jones III)** |
| | : | |
| **Plaintiffs** | : | **Class Action** |
| | : | |
| **v.** | : | |
| | : | |
| **PENNSYLVANIA DEPARTMENT OF HUMAN SERVICES and TERESA MILLER, in her capacity as Acting Secretary of the Department of Human Services,** | : : : : | |
| | : | |
| **Defendants** | : | |

## BRIEF IN SUPPORT OF
## <u>MOTION TO DISMISS</u>

| | |
|---|---|
| Department of Human Services | Matthew J. McLees |
| Office of General Counsel | Deputy Chief Counsel |
| 625 Forster Street | |
| 3rd Floor West | Kathleen A. Grogan |
| Health & Welfare Building | Deputy Chief Counsel |
| Harrisburg, PA 17120 | |
| (717) 772-2800 (phone) | Doris M. Leisch |
| (717) 772-0717 (fax) | Chief Counsel |

# **TABLE OF CONTENTS**

**PROCEDURAL HISTORY** ....................................................................1

**FACTUAL BACKGROUND** ................................................................3

**STATEMENT OF QUESTIONS INVOLVED** .....................................4

I.   Whether Counts I and II of Plaintiffs' Complaint must be dismissed for failure to state a claim because Plaintiffs have no privately enforceable right to Early and Periodic Screening, Diagnosis, and Treatment services or reasonably prompt services? .............................................................4

II.  Whether Count III of Plaintiffs' Complaint must be dismissed for failure to state a claim because Plaintiffs have no privately enforceable right under the regulations issued under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act? ..........................................................4

**ARGUMENT** .........................................................................................5

I.   PLAINTIFFS DO NOT HAVE A PRIVATELY ENFORCEABLE RIGHT TO EARLY AND PERIODIC SCREENING, DIAGNOSIS, AND TREATMENT OR TO REASONABLY PROMPT SERVICES ..................5

    A.   Plaintiffs Do Not Have a Privately Enforceable Right to EPSDT Services Under 42 U.S.C. § 1396a(a)(43)(C). .....................................9

    B.   Plaintiffs Do Not Have a Privately Enforceable Right to EPSDT Services Under 42 U.S.C. §§ 1396a(a)(10)(A) and 1396a(a)(8). .......10

II.  PLAINTIFFS DO NOT HAVE A RIGHT TO PRIVATELY ENFORCE THE REGULATIONS ON WHICH THEY RELY .....................................13

**CONCLUSION** ....................................................................................20

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

<u>Alexander v. Sandoval</u>, 532 U.S. 275, 121 S. Ct. 1511 (2001) .................... 8, 16, 17

<u>Armstrong v. Exceptional Child Ctr.</u>, 135 S. Ct. 1378 (2015) ........... 8, 9, 11, 12, 13

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955 (2007) ........................5

<u>Blessing v. Freestone</u>, 520 U.S. 329, 117 S. Ct. 1353 (1997) ......................... 5, 7, 8

<u>Bradley v. Pittsburgh Bd. of Educ.</u>, 913 F.2d 1064 (3d Cir. 1990) ......................... 6

<u>Cannon v. Univ. of Chicago</u>, 441 U.S. 677, 99 S. Ct. 1946 (1979) ........................8

<u>City of Rancho Palos Verdes v. Abrams</u>, 544 U.S. 113, 125 S. Ct. 1453 (2005) .....6

<u>Douglas v. Indep. Living Ctr.</u>, 565 U.S. 606, 132 S. Ct. 1204 (2012) .....................8

<u>Frederick L. v. Dep't of Pub. Welfare</u>, 157 F. Supp. 2d 509 (E.D. Pa. 2001) ........19

<u>Gonzaga Univ. v. Doe</u>, 536 U.S. 273, 122 S. Ct. 2268 (2002).................... 5, 6, 7, 8

<u>Harris v. James</u>, 127 F.3d 993 (11th Cir. 1997).........................................................17

<u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902 (3d Cir. 1997) .............................5

<u>Pa. Pharmacists Ass'n v. Houstoun</u>, 283 F.3d 531 (3d Cir. 2002) ......................6, 11

<u>Pa. Prot. & Advocacy v. Dep't of Pub. Welfare</u>,
   402 F.3d 374 (3d Cir. 2005) .................................................................................15

<u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 451 U.S. 1,
   101 S. Ct. 1531 (1981)...........................................................................................7

<u>Phillips v. County of Allegheny</u>, 515 F.3d 224 (3d Cir. 2008) .................................5

<u>Sabree v. Richman</u>, 367 F.3d 180 (3d Cir. 2004) ....................................................11

South Camden Citizens in Action v. New. Jersey Dep't of Env. Resources,
    274 F.3d 771 (3d Cir. 2001) ...........................................................................17

Three Rivers Ctr. for Indep. Living v. Hous. Auth.,
    382 F.3d 412 (3d Cir. 2004) .........................................................................18

Zatuchni v. Richman, 2008 WL 3408554 (E.D. Pa. Aug. 12, 2008) ............... 18, 19

**Statutes**

42 Pa. C.S. §§ 6301-6365 ................................................................................... 3
62 P.S. § 701 ....................................................................................................... 3
62 P.S. § 703 ....................................................................................................... 3
62 P.S. § 704.1 .................................................................................................... 3
62 P.S. § 2301 ..................................................................................................... 3
62 P.S. § 2305 ..................................................................................................... 3
29 U.S.C. § 794 ..................................................................................... 1, 2, 14, 15
42 U.S.C. § 1396-1..............................................................................................3
42 U.S.C. §§ 1396a-1 – 1396w-5 ....................................................................... 1
42 U.S.C. § 1396a(a)(8) .................................................................. 1, 10, 11, 13
42 U.S.C. § 1396a(a)(10)(A) ........................................................... 1, 10, 11, 12
42 U.S.C. § 1396a(a)(30)(A) .............................................................................. 8
42 U.S.C. § 1396a(a)(43)(A) ..............................................................................9
42 U.S.C. § 1396a(a)(43)(B) .............................................................................. 9
42 U.S.C. § 1396a(a)(43)(C)............................................................................1, 9
42 U.S.C. § 1396c .............................................................................................. 10
42 U.S.C. § 1983................................................................................................5, 6
42 U.S.C. § 2000d-1........................................................................................... 16
42 U.S.C. § 12132 ............................................................................. 1, 2, 13, 15

**Regulations**

28 C.F.R. § 35.130 ...................................................................................... 13, 15
28 C.F.R. § 35.130(b)(7)(i) ................................................................................15
28 C.F.R. § 35.130(d) ................................................................................. 16, 18
28 C.F.R. § 41.31 ............................................................................................... 15
28 C.F.R. § 41.32 ............................................................................................... 15
28 C.F.R. § 41.51 ............................................................................................... 15
28 C.F.R. § 41.51(d) .................................................................................... 16, 18
28 C.F.R. § 41.53 ................................................................................................15
42 C.F.R. § 430.10 ...............................................................................................3

45 C.F.R. § 84.4 ...................................................................................................15

45 C.F.R. § 84.4(b)(2) ...........................................................................................16

45 C.F.R. § 84.52 ...................................................................................................15

55 Pa. Code § 3130.12 ............................................................................................. 3

55 Pa. Code § 3130.21(4) ........................................................................................ 3

55 Pa. Code § 3130.71 ............................................................................................. 3

55 Pa. Code § 3130.72 ............................................................................................. 3

## PROCEDURAL HISTORY

Plaintiffs are six individuals under the age of 21 who have been diagnosed with mental illness and adjudicated dependent.  Complaint at ¶¶ 9, 23-28.  Several Plaintiffs have also been adjudicated delinquent.  On behalf of themselves and a putative class of similarly situated individuals, Plaintiffs allege that in providing Child Welfare and Medical Assistance ("MA") services, the Pennsylvania Department of Human Services ("Department") and Secretary Miller have violated specific provisions of Title XIX of the Social Security Act ("Title XIX"), 42 U.S.C. §§ 1396a-1 – 1396w-5, and implementing regulations; Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794; and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and implementing regulations. Complaint at ¶¶ 169, 172, 177, 178.

Specifically, Plaintiffs allege in Counts I and II that Secretary Miller failed to provide Early and Periodic Screening, Diagnosis, and Treatment ("EPSDT") services and MA-funded behavioral health services with reasonable promptness, in violation of Sections 1396a(a)(10)(A), 1396a(a)(43)(C), and 1396a(a)(8) of Title XIX and implementing regulations.  Id. at ¶¶ 164-169, 171-172.

In Count III, Plaintiffs allege that the Department and Secretary Miller discriminated against them on the basis of their disabilities by failing to make reasonable modifications to Department programs when necessary to avoid

discrimination and by failing to administer the Child Welfare and MA programs in the most integrated settings, in violation of Section 504 of the RA, 29 U.S.C. § 794, Title II of the ADA, 42 U.S.C. § 12132, and implementing regulations. Id. at ¶¶ 182-183.

Plaintiffs seek declaratory and broad, system-wide injunctive relief. They demand that the Court require the Department and Secretary Miller to develop a "full array of Child Welfare and MA services and placements" to meet their needs and those of putative class members in the "most integrated settings . . ." Id. at 41. As explained below, none of the provisions on which Plaintiffs purport to rely gives rise to a privately enforceable right. Because Plaintiffs have therefore failed to state a claim on which relief may be granted, the Complaint must be dismissed.

## FACTUAL BACKGROUND

Medicaid, known in Pennsylvania as Medical Assistance, is a cooperative federal-state program by which the federal government provides funds to states to enable those states, "as far as practicable," to make medical assistance available to indigent, elderly, and disabled individuals. 42 U.S.C. § 1396-1. Under Title XIX, a State is required to submit a State Plan to the United States Department of Health and Human Services ("HHS") for approval. Id.; 42 C.F.R. § 430.10.

Under state law, the Department is responsible to administer county-provided child welfare services and to partially fund county services. 62 P.S. §§ 701, 704.1; 55 Pa. Code § 3130.12. Each county in Pennsylvania has the power and duty to provide child welfare services through an agency. Complaint at ¶ 34; 62 P.S. §§ 703, 2301, 2305. Each county has its own rules and policies for providing child welfare services, and is responsible for making placement recommendations for dependent children to the Juvenile Court in its respective county. 55 Pa. Code §§ 3130.12, 3130.21(4). The placement can be in the child's home, in a foster home, or in a residential facility. 55 Pa. Code § 3130.12. Any recommendation by a county children and youth agency regarding a child's placement must be presented to the Juvenile Court for the Court to determine the child's disposition. 42 Pa. C.S. §§ 6301-6365; 55 Pa. Code §§ 3130.71, 3130.72.

## STATEMENT OF QUESTIONS INVOLVED

I.      Whether Counts I and II of Plaintiffs' Complaint must be dismissed for failure to state a claim because Plaintiffs have no privately enforceable right to Early and Periodic Screening, Diagnosis, and Treatment services or reasonably prompt services?

   *Suggested Answer:  Yes.*

II.     Whether Count III of Plaintiffs' Complaint must be dismissed for failure to state a claim because Plaintiffs have no privately enforceable right under the regulations issued under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act?

   *Suggested Answer:  Yes.*

## ARGUMENT

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true the well-pleaded facts in the Complaint and construe all reasonable inferences in the light most favorable to the non-moving party. If it appears certain that the non-moving party cannot prove any set of facts in support of the claim for relief, the Court should dismiss the complaint. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997) (citations omitted). A court need not, however, "credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Id. Plaintiffs must make a sufficient showing of enough factual matter (taken as true) to raise a right to relief above the speculative level. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d. Cir. 2008) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007)). For the reasons explained below, Plaintiffs' Complaint should be dismissed for failure to state a claim on which relief may be granted.

## I. PLAINTIFFS DO NOT HAVE A PRIVATELY ENFORCEABLE RIGHT TO EARLY AND PERIODIC SCREENING, DIAGNOSIS, AND TREATMENT OR TO REASONABLY PROMPT SERVICES

In order to seek redress under 42 U.S.C. § 1983 ("Section 1983"), a plaintiff must assert the violation of a federal right, not merely the violation of a federal law. Gonzaga Univ. v. Doe, 536 U.S. 273, 282, 122 S. Ct. 2268, 2274 (2002) (quoting Blessing v. Freestone, 520 U.S. 329, 340, 117 S. Ct. 1353, 1359 (1997));

Pa. Pharmacists Ass'n v. Houstoun, 283 F.3d 531, 535 (3d Cir. 2002).[1]  Section

1983 "does not provide an avenue for relief every time a state actor violates a

federal law."  City of Rancho Palos Verdes v. Abrams, 544 U.S. 113, 119, 125 S.

Ct. 1453, 1457 (2005).  Instead, a plaintiff seeking to vindicate the violation of a

federal statute under Section 1983 must demonstrate that the statute "creates an

individually enforceable right in the class of beneficiaries to which he belongs."

Id. at 120 (citing Gonzaga, 536 U.S. at 285, 122 S. Ct. at 2276).

The Supreme Court has on several occasions analyzed whether a federal

statute creates privately enforceable rights.  In Gonzaga, the Court began its

analysis by noting that the "typical remedy" for state noncompliance with

legislation enacted pursuant to the congressional spending power, such as Title

XIX, "is not a private cause of action but rather action by the Federal Government

to terminate funds to the State."  Gonzaga, 536 U.S. at 280, 122 S. Ct. at 2273

---

[1] Section 1983 provides:

> Every person who, under color of [State law], subjects, or
> causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the
> party injured in an action at law, suit in equity, or other
> proper proceeding for redress. . . .

42 U.S.C. § 1983.  It is well established that the "rights, privileges, or immunities"
must exist in some other federal law; Section 1983 does not itself create
substantive rights.  See Gonzaga, 536 U.S. at 285, 122 S. Ct. at 2276; Bradley v.
Pittsburgh Bd. of Educ., 913 F.2d 1064, 1079 (3d Cir. 1990).

(quoting Pennhurst State Sch. & Hosp. v. Halderman, 451 U.S. 1, 28, 101 S. Ct. 1531, 1545 (1981)).  Mindful of this "typical remedy," the Court explained that the sole inquiry to determine whether legislation confers an individual right is whether the "text and structure of the statute" show that "Congress intended to confer individual rights upon a class of beneficiaries."  Id. at 285-86 (citations omitted). Congress must "speak with a clear voice" and manifest "unambiguous" intent to confer individual rights.  Id. at 280 (quoting Pennhurst, 451 U.S. at 28, 101 S. Ct. at 1545 & n.21).

The Court emphasized that "only violations of *rights*, not *laws*," can give rise to Section 1983 actions, rejecting the notion that such an action may be maintained for "anything short of an unambiguously conferred right."  Id. at 282-83 (emphasis in original).  The Court concluded that "it is *rights*, not the broader or vaguer 'benefits' or 'interests,' that may be enforced under the authority of that section."  Id. at 283 (emphasis in original).

Accordingly, if a statute contains no "rights-creating language" or "individually focused terminology," it cannot be privately enforced under Section 1983.  Id. at 287.  If a provision is directed to the entity regulated or toward a policy or practice, both of which demonstrate an "aggregate focus" rather than "'whether the needs of any particular person have been satisfied,'" then it "cannot 'give rise to individual rights.'"  Id. at 288 (quoting Blessing, 520 U.S. at 343-44, 117 S. Ct. at 1361).  Stated another way, the critical consideration in determining

whether a statute reflects congressional intent to "create new individual rights" is that the text of the provision "must be 'phrased in terms of the persons benefited.'" Id. (quoting Cannon v. Univ. of Chicago, 441 U.S. 677, 692, 99 S. Ct. 1946, 1955 (1979)).

More recently, the Supreme Court addressed the private enforceability of Title XIX in Armstrong v. Exceptional Child Ctr., 135 S. Ct. 1378 (2015). In Armstrong, the Court reasoned that "the Medicaid Act implicitly precludes private enforcement" of 42 U.S.C. § 1396a(a)(30)(A), which may not be circumvented by invoking the Court's equitable powers. Id. at 1385 (citing Douglas v. Indep. Living Ctr., 565 U.S. 606, 619-20, 132 S. Ct. 1204, 1212-13 (2012)). The Court reasoned that Section 1396a(a)(30)(A) lacked "the sort of rights-creating language needed to imply a private right of action." Id. at 1387 (citing Alexander v. Sandoval, 532 U.S. 275, 286-87, 121 S. Ct. 1511, 1519-20 (2001)).[2] Rather, the provision was phrased as a directive to the federal agency. Id. The Court concluded that the provision authorizing the Secretary of Health and Human

---

[2] Although this decision was rendered in the context of an implied right of action, not under Section 1983, the Gonzaga Court made clear that the same analysis applies to determine whether a statute creates rights, regardless of whether as an implied right of action or under Section 1983. See Gonzaga, 536 U.S. at 283, 122 S. Ct. at 2275 (rejecting notion that implied right of action cases are separate and distinct from Section 1983 cases and concluding that implied right of action cases "should guide the determination of whether a statute confers rights enforceable under § 1983").

Services to withhold funds from an agency for noncompliance, coupled with the "judicially unadministrable" nature of Section 1396a(a)(30)(A), demonstrated that the section did not confer a privately enforceable right.  Id. at 1385.

### A.    Plaintiffs Do Not Have a Privately Enforceable Right to EPSDT Services Under 42 U.S.C. § 1396a(a)(43)(C).

Under the Supreme Court's jurisprudence articulated in Gonzaga and Armstrong, Plaintiffs have no privately enforceable right to EPSDT services under 42 U.S.C. § 1396a(a)(43)(C).  As does Section 30(A), at issue in Armstrong, the provision on which Plaintiffs rely is phrased as a directive to the federal agency.

Section 1396a(a)(43) imposes several obligations on states to qualify for federal funding.  It requires that the State Plan provide for informing all MA beneficiaries under the age of 21 that EPSDT services are available and "providing or arranging for the provision of . . . screening services in all cases where they are requested."  42 U.S.C. § 1396a(a)(43)(A), (B).  Section (a)(43)(C) provides that a State Plan must "provide for . . . arranging for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment the need for which is disclosed by such child health screening services."  42 U.S.C. § 1396a(a)(43)(C).

This entire section, and Section (a)(43)(C) specifically, is devoid of any language that unambiguously confers individual rights.  Rather, the text of the

statutory section has an aggregate focus and is directed toward the regulated entity, which in Pennsylvania is the Department.

This section requires that the State Plan provide for arranging for EPSDT services.  A state can make such arrangements directly or make a referral to another entity.  The types of services that must be arranged and the manner in which they are arranged will be as diverse as the individuals receiving EPSDT services.  The statute imposes no requirement for how these services are to be arranged; states have broad latitude in deciding who must do the arranging.

Congress has authorized the states to determine how best to provide these different services and has built in repercussions for noncompliance.  See 42 U.S.C. § 1396c.  Just as in Armstrong, Section 1396a(a)(43)(C) is a complex provision with a comprehensive administrative remedy for noncompliance to be imposed by the federal agency that has the requisite expertise in the program.  For these reasons, Section 1396a(a)(43)(C) is not privately enforceable, and Plaintiffs cannot state a claim for any purported failure to provide them with EPSDT services.

**B.     Plaintiffs Do Not Have a Privately Enforceable Right to EPSDT Services Under 42 U.S.C. §§ 1396a(a)(10)(A) and 1396a(a)(8).**

Just as with Section 1396a(a)(43)(C), the remaining two statutory sections on which Plaintiffs rely in Counts I and II, 42 U.S.C. §§ 1396a(a)(10)(A) and 1396a(a)(8), are not privately enforceable.

In a case decided before the Supreme Court's most recent guidance in Armstrong, the Third Circuit held that Sections 1396a(a)(8) and 1396a(a)(10) confer a privately enforceable right to services with reasonable promptness.  See Sabree v. Richman, 367 F.3d 180, 183 (3d Cir. 2004).[3]  As discussed more fully above, in Armstrong, the Court held that Section 30(A) does not confer a privately enforceable right because it is phrased as a directive to the federal agency, is complex, and expressly provides for a statutory administrative remedy for noncompliance.  See Armstrong, 135 S. Ct. at 1378.  The Supreme Court's analysis in Armstrong undermines the very lynchpin of the Court's decision in Sabree.  This Court must therefore re-examine the private enforceability of the provisions on which Plaintiffs rely.

Critical to the Sabree Court's holding was its reasoning that the language in Title XIX, which specifies the elements that must be included in a State Plan, was "mandatory, not precatory," and that the statutory provisions "do not focus on 'the [entity] regulated rather than the individuals protected.'"  Sabree, 367 F.3d at 190.  The Armstrong Court disagreed, explaining that the language that the introductory phrase in Section 1396a, "A state plan must . . . ," is "phrased as a directive to the federal agency charged with approving state Medicaid plans, not as a conferral of

---

[3] But see Pa. Pharmacists Ass'n, 283 F.3d at 534 (Alito, J., plurality) (acknowledging divergent views of this issue in other circuits, as well as within Third Circuit, which was later resolved in Armstrong).

11

the right to sue upon the beneficiaries of a State's decision to participate in Medicaid." <u>Armstrong</u>, 135 S. Ct. at 1387.

Although the provision of Title XIX in <u>Armstrong</u> is different from those on which Plaintiffs rely here, the reasoning of the Court in <u>Armstrong</u> compels the conclusion that the provisions here likewise do not confer enforceable rights. First, Plaintiffs purport to rely on Section 1396a(a)(10)(A). Complaint at ¶¶ 164, 169. Section (a)(10)(A) provides that a State Plan must "provide for making medical assistance available" to covered individuals. 42 U.S.C. § 1396a(a)(10)(A).

Just like the provision analyzed in <u>Armstrong</u>, Section (a)(10)(A) is broad and non-specific. While this section specifies the populations who are eligible for MA, this section is not specific on what it is that qualifies as "making medical assistance available" to those populations or how MA is to be made available or provided. As with the provision analyzed in <u>Armstrong</u>, Congress authorized the Secretary of Health and Human Services to withhold funds when a state fails to comply with Title XIX requirements, including Section 1396a(a)(10)(A). As such, like Section 1396a(a)(30)(A) in <u>Armstrong</u>, Section 1396a(a)(10)(A) is a complex provision with a comprehensive administrative remedy for noncompliance to be imposed by the federal agency that has the requisite expertise in the program.

Next, Plaintiffs' purported reliance in Count II on Section 1396a(a)(8), Complaint at ¶¶ 171-172, is also unavailing. As do the other sections, Section 1396a(a)(8) provides that "[A] State Plan must" provide all individuals wishing to

12

apply for MA the opportunity to do so, and "that such assistance shall be furnished with reasonable promptness to all eligible individuals."  42 U.S.C. § 1396a(a)(8). In addition to being privately unenforceable for the same reasons that apply to the other sections, Section 1396a(a)(8) is privately unenforceable because the "reasonable promptness" requirement of the statute is, to use the <u>Armstrong</u> Court's term, "judicially unadministrable."  The term "reasonable promptness" is not defined.  The term is difficult for courts to administer because what may be reasonably prompt for one individual may not be reasonably prompt for another individual, leading to the "risk of inconsistent interpretations."  <u>Armstrong</u>, 135 S. Ct. at 1385.  This combination of broad, non-specific language and the a statutory remedy for noncompliance demonstrate that Section 1396a(a)(8) does not confer a privately enforceable right.

In sum, Plaintiffs have failed to state a claim for failure to make EPSDT services available and failure to provide services with reasonable promptness. Therefore, Counts I and II of the Complaint should be dismissed.

## II.    PLAINTIFFS DO NOT HAVE A RIGHT TO PRIVATELY ENFORCE THE REGULATIONS ON WHICH THEY RELY

In Count III, Plaintiffs allege that Secretary Miller "subjects Plaintiffs to discrimination by reason of their disabilities in violation of the ADA, 42 U.S.C. § 12132, and its implementing regulations at 28 C.F.R. § 35.130," Complaint at ¶ 177, and that the Department "subjects Plaintiffs to discrimination solely by

reason of their disabilities in violation of Section 504 of the RA, 29 U.S.C. § 794."
Id. at ¶ 178.  Relying only on various regulations as the basis for their claims,
Plaintiffs allege that Defendants:  (a) deny Plaintiffs the opportunity to participate
in Child Welfare services, such as foster and group homes; (b) afford Plaintiffs
with unequal opportunities to participate and benefit from Child Welfare services;
(c) provide Plaintiffs with Child Welfare services that are not as effective as those
provided to others; and (d) limit Plaintiffs in the enjoyment of the "rights,
privileges, advantages, and opportunities" enjoyed by others receiving Child
Welfare services.  Id. at ¶ 179.  Plaintiffs also allege that Defendants "aid and
perpetrate discrimination against Plaintiffs by providing assistance to Child
Welfare agencies which discriminate against them."  Id. at ¶ 180.  Finally,
Plaintiffs allege that Defendants fail to make reasonable modifications and to
administer the Child Welfare and MA programs in the most integrated settings to
meet Plaintiffs' needs.  Id. at ¶¶ 182-183.[4]

     Title II of the ADA prescribes that:

> [N]o qualified individual with a disability shall, by reason
> of such disability, be excluded from participation in or be
> denied the benefits of the services, programs, or activities

---

[4] Plaintiffs purport to rely on the following regulations to support their claims in Count III:  28 C.F.R. § 41.31; 28 C.F.R. § 41.32; 28 C.F.R. § 35.130(a), (b)(1)(i)-(ii), (v), (vii), (b)(3), (b)(7), (d); 28 C.F.R. § 41.51(b)(1)(i)-(iii), (v), (b)(3)(i)-(ii), (d); 28 C.F.R. § 41.53; 45 C.F.R. § 84.4 (b)(1)(i)-(iii), (v), (vii), (b)(2), (b)(4); and 45 C.F.R. § 84.52(a).  The text of the cited provisions is reprinted in Exhibit "A," hereto.

> of a public entity, or be subjected to discrimination by any
> such entity.

42 U.S.C. § 12132.

Similarly, Section 504 of the RA provides:

> No otherwise qualified individual with a disability in the
> United States . . . shall, solely by reason of her or his
> disability, be excluded from the participation in, be denied
> the benefits of, or be subjected to discrimination under any
> program or activity receiving Federal financial assistance
> . . . .

29 U.S.C. § 794.  Because the language and implementing regulations of the ADA

and the RA are virtually identical, they are often construed and interpreted in a

consistent manner.  See Pa. Prot. & Advocacy v. Dep't of Pub. Welfare, 402 F.3d

374, 379 n.3 (3d Cir. 2005).

The regulations on which Plaintiffs rely generally prescribe the manner in

which an entity that receives federal funding must act in administering its

programs.  See 28 C.F.R. §§ 35.130, 41.31, 41.32, 41.51, 41.53; 45 C.F.R. §§ 84.4,

84.52.  Plaintiffs also allege violations of regulations that require a public entity to

make "reasonable modifications" in its policies, practices, or procedures when

necessary to avoid discrimination, unless the entity can demonstrate that making

the modifications would fundamentally alter the nature of the service, program, or

activity; 28 C.F.R. §§ 35.130(b)(7)(i), 41.53; and on the "most integrated setting"

regulations, which require a public entity to "administer services, programs, and

activities in the most integrated setting appropriate to the needs of qualified

15

individuals with disabilities."  28 C.F.R. §§ 35.130(d), 41.51(d); 45 C.F.R.

§ 84.4(b)(2).

Neither the ADA nor the RA contains any language that mentions, much less

requires, reasonable modifications, services in the most integrated setting, or the

types of services to be provided.  Because any "right" to services in a certain

manner, including the "most integrated setting," does not appear in the statute, the

purported rights ostensibly created by the regulations and relied upon by Plaintiffs

are not privately enforceable.  Therefore, Plaintiffs have failed to state a claim

based on those regulations.

In Alexander v. Sandoval, 532 U.S. 275, 121 S. Ct. 1511 (2001), the

Supreme Court set forth the analytical framework with which to determine whether

rights set forth in administrative regulations are privately enforceable.  In

addressing the question whether a regulation can create an enforceable right when

the proffered right does not appear in the statute, the Sandoval Court reasoned that

language in "a regulation may invoke a private right of action that Congress

through statutory text created, but it may not create a right that Congress has not."

Id. at 291.  The Court noted that where the regulation is a directive to an agency, as

opposed to focusing on the individuals protected, there is far less reason to infer a

private remedy.  Id. at 289.  Applying this analysis, the Court held that Section 602

of Title VI of the Civil Rights Act, 42 U.S.C. § 2000d–1, the provision that

authorized agencies to promulgate regulations, did not contain any rights-creating

language.  Therefore, the regulation that prohibited conduct that had a disparate

impact did not give rise to a private right of action.  Id. at 293.

The Third Circuit extended the Supreme Court's reasoning to claims

asserted under Section 1983 in South Camden Citizens in Action v. New. Jersey

Dep't of Env. Resources, 274 F. 3d 771 (3d Cir. 2001).  There, the plaintiffs sought

to enforce different regulations than those analyzed in Sandoval, promulgated

under Title VI of the Civil Rights Act by the Environmental Protection Agency.

Id. at 774.  The specific issue the Court addressed was "whether a regulation can

create a right enforceable through [S]ection 1983 where the alleged right does not

appear explicitly in the statute, but only appears in the regulation."  Id. at 781.

Relying on Sandoval, the Court held that the regulations could not create a federal

right enforceable by Section 1983.  The Court explained:

> [T]he regulations do more than define or flesh out the
> content of a specific right conferred upon the plaintiffs by
> Title VI. Instead, the regulations implement Title VI to
> give the statute a scope beyond that Congress
> contemplated, as Title VI does not establish a right to be
> free of disparate impact discrimination. Thus, the
> regulations are "too far removed from Congressional
> intent to constitute a 'federal right' enforceable under
> § 1983."

Id. at 790 (quoting Harris v. James, 127 F.3d 993, 1009 (11th Cir. 1997)).

Applying the analysis in these cases to a claim brought to enforce

regulations promulgated by the Department of Housing and Urban Development

under Section 504 of the RA, the Third Circuit reaffirmed that even if a statutory

17

provision is privately enforceable, as Section 504 of the RA is, a party can

privately enforce only a personal right that the statute creates.  See Three Rivers

Ctr. for Indep. Living v. Hous. Auth., 382 F.3d 412 (3d Cir. 2004).  In that case,

the plaintiffs sought to enforce regulations that mandate a certain number of

accessible housing units.  Id. at 415.  The Court examined the regulations at issue

and concluded that they did not articulate personal rights because they had an

aggregate, not individual, focus.  Id. at 429-30.  Because the regulations did not set

forth personal rights, they were not privately enforceable.  Id. at 431.

Applying the guidance of the Third Circuit in Three Rivers, a sister court in

the Eastern District of Pennsylvania addressed the enforceability of two of the

regulations which Plaintiffs rely on here, 28 C.F.R. §§ 35.130(d) (programs shall

be administered in "most integrated setting") and 41.51(d) (same), and concluded

that the regulations were not enforceable by private action.  See Zatuchni v.

Richman, 2008 WL 3408554, at *11 (E.D. Pa. Aug. 12, 2008).[5]  The Court

reasoned that the regulations were directed to the entity regulated rather than the

individuals protected and had an aggregate, as opposed to an individual, focus.  Id.

Therefore, the Court held, the regulations "impose no enforceable obligation to

provide services to each disabled individual in the most integrated setting," and it

---

[5] Pursuant to Local Rule 7.8(a), a copy of this unreported opinion is attached hereto as Exhibit "B."

dismissed the claims that attempted to enforce the regulations.  Id. at *12.[6]

Here, the ADA and RA both create rights not to be subject to discrimination. The regulations, however, go beyond the rights conferred in the statutes.  The regulations limit the actions a public entity may take and impose an obligation on public entities to make "reasonable modifications" and administer programs in the "most integrated setting."  These regulations do not define or explicate a statutory right that Congress created.  Rather, like the unenforceable regulations in Sandoval and South Camden Citizens in Action, the regulations cited by Plaintiffs impose obligations that are not set forth in the statute and go beyond the scope of the statute.

The regulations are not privately enforceable for the additional reason that, like the regulations in Three Rivers and Zatuchni, the regulations on which Plaintiffs rely have an aggregate, not individual, focus.  Because they do not have an individual focus, the regulations do not articulate personal rights that are privately enforceable.

Accordingly, the regulations on which Plaintiffs base Count III fail to set forth personal rights that Congress created and are unenforceable by private action.

---

[6] Although a Court in the Eastern District of Pennsylvania reached a contrary holding in Frederick L. v. Dep't of Pub. Welfare, 157 F. Supp. 2d 509 (E.D. Pa. 2001), the Court in that case interpreted Sandoval as being limited to whether the regulation prohibited conduct that the statute permitted.  See Frederick L., 157 F. Supp. 2d at 537-38.  The decision in Three Rivers demonstrates that the analysis in Sandoval is not so limited.

Count III of the Complaint must therefore be dismissed.

## **<u>CONCLUSION</u>**

For the reasons set forth above, Plaintiffs have failed to state a claim upon which relief can be granted, and the Complaint should be dismissed.

Respectfully submitted,

Date: March 12, 2018

/s/ *Matthew J. McLees*
Matthew J. McLees
Deputy Chief Counsel
Attorney I.D. No. 71592
Kathleen A. Grogan
Deputy Chief Counsel
Attorney I.D. No. 50543
Doris M. Leisch
Chief Counsel
Attorney I.D. No. 42375
Department of Human Services
Office of General Counsel
625 Forster Street
3rd Floor West, Health & Welfare Building
Harrisburg, PA  17120
(717) 772-2800 (phone)
(717) 772-0717 (fax)
mmclees@pa.gov
kgrogan@pa.gov

## <u>LOCAL RULE 7.8(b)(2) CERTIFICATION</u>

I certify under penalty of perjury that the Brief in Support of Motion of Dismiss complies with Local Rule 7.8(b)(2) because, based on the word processing system used to prepare the Brief, Word 2016, the Brief contains 4474 words (excluding the Table of Contents and Table of Authorities).


Date:  March 12, 2018                    /s/ *Matthew J. McLees*
                                         Matthew J. McLees

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **S.R.,** *et al.*, | : | |
| | : | |
| **Plaintiffs** | : | |
| | : | **No. 1:17-cv-02332-JEJ** |
| **v.** | : | |
| | : | **(Judge John E. Jones III)** |
| **PENNSYLVANIA DEPARTMENT OF** | : | |
| **HUMAN SERVICES and TERESA MILLER,** | : | **Class Action** |
| **in her capacity as Acting Secretary of the** | : | |
| **Department of Human Services,** | : | |
| | : | |
| **Defendants** | : | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Brief in Support

of Motion to Dismiss was today served on the following attorneys via the Court's

electronic service:

> Kelly L. Darr, Esquire
> kdarr@drnpa.org
> Shanon S. Levin, Esquire
> slevin@disabilityrightspa.org
> Gabriella Labella, Esquire
> glabella@drnpa.org
> Disability Rights Pennsylvania
> 1315 Walnut Street
> Philadelphia, PA  19107-4798
>
> Jeni Hergenreder, Esquire
> jhergenreder@drnpa.org
> Disability Rights Pennsylvania
> 429 Fourth Avenue, Suite 701
> Pittsburgh, PA  15219-1505

Date:  March 12, 2018                      /s/ *Matthew J. McLees*
                                           Matthew J. McLees
                                           Deputy Chief Counsel
                                           Attorney ID No. 71592
                                           Department of Human Services
                                           Office of General Counsel
                                           3rd Floor West, Health & Welfare Bldg.
                                           Harrisburg, PA  17120
                                           (717)783-2800 (phone)
                                           (717) 772-0717 (fax)
                                           mmclees@pa.gov
                                           kgrogan@pa.gov