IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| S.R., by and through his next friend, Philip Rosenbauer; THEODORE SMITH, by and through his next friend, Ashley Maddison; S.H., by and through her next friend, Julia Shmilovich; M.T., by and through his next friend, Ashley Maddison; N.C., by and through his next friend, Sue Walther; CHRYSTAL STEWARD, by and through her next friend, Deborah Fegan, on behalf of themselves and all others similarly situated, | : : : : : : : : : : : | |
| Plaintiffs, | : : | No. 1:17-cv-02332-JEJ |
| v. | : : | Class Action |
| PENNSYLVANIA DEPARTMENT OF HUMAN SERVICES and TERESA MILLER, in her capacity as Acting Secretary of the Department of Human Services, | : : : : : | |
| Defendants. | : : : | |

**BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

Kelly Darr (PA 80909)
Shanon Levin (PA 49267)
Rachel Mann (PA 49267)
Gabriella Labella (PA 87858)
Disability Rights Pennsylvania
1315 Walnut Street, Suite 500
Philadelphia, PA 19107-4705
(215) 238-8070

Jeni Hergenreder (PA 208282)
Disability Rights Pennsylvania
429 Fourth Avenue, Suite 701
Pittsburgh, PA 15219-1505
(412) 391-5225

Counsel for Plaintiffs

## **TABLE OF CONTENTS**

Table of Authorities ............................................................ iii

Counterstatement of Factual and Procedural Background ....................................... 1

Argument.................................................................................3

I.    Standard of Review..................................................................3

II.   Plaintiffs Can Enforce Title XIX's Entitlement, EPSDT
      Screening, and Reasonable Promptness Mandates
      Through Section 1983 ........................................................4

      A.    Title XIX Requires DHS to Provide Plaintiffs and
            Putative Class Members with Medicaid Services with
            Reasonable Promptness .................................................4

      B.    It Is Well-Settled that Medicaid Beneficiaries Can Enforce
            Title XIX's Entitlement, EPSDT Screening, and
            Reasonable Promptness Mandates in Section 1983 Actions ......................6

      C.    *Armstrong* Does Not Support DHS's Assertion that
            Plaintiffs Cannot Enforce Title XIX's Entitlement,
            EPSDT Screening, and Reasonable Promptness Mandates
            in Section 1983 Actions................................................9

            1.   The Majority Opinion in *Armstrong* Does Not Override
                 the *Blessing-Gonzaga Framework* .......................................9

            2.   *Armstrong* Does Not Render the Entitlement, EPSDT
                 Screening, and Reasonable Promptness Mandates
                 Unenforceable by Medicaid Beneficiaries in Section
                 1983 Actions...................................................13

III.  Plaintiffs Have a Private Right of Action to Enforce Their
      ADA and RA Claims..................................................15

      A.    The ADA's and RA's Statutory and Regulatory
            Framework .........................................................15

i

B.    Plaintiffs' ADA and RA Claims Are Privately
Enforceable Since They Arise Directly Under
the Statute ............................................................................... 16

C.    Plaintiffs Can Rely on the Regulations Because
They Are Independently Enforceable and
Flesh Out the Statute ............................................................... 19

Conclusion ........................................................................................ 22

# TABLE OF AUTHORITIES

## Cases

*Ability Center of Greater Toledo v. City of Sandusky*,
    385 F.3d 901 (6th Cir. 2004) .........................................................................20

*Alexander v. Choate*,
    469 U.S. 287 (1985)..........................................................................................18

*Alexander v. Sandoval*,
    532 U.S. 275 (2001)..........................................................................................19

*Armstrong v. Exceptional Child Center, Inc.*,
    ___ U.S. ___, 135 S. Ct. 1378 (2015) ..............................9, 10, 11, 12, 13, 14

*Armstrong v. Schwartzenegger*,
    622 F.3d 1058 (9th Cir. 2010) .........................................................................20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................3

*Barnes v. Gorman*,
    536 U.S. 181 (2002)..........................................................................................16

*Benjamin v. Dep't of Public Welfare*
    768 F. Supp. 2d 747 (M.D. Pa. 2011)...............................................................17

*Benjamin v. Dep't of Public Welfare*,
    No. 1:09-cv-1182-JEJ, Mem. and Order (M.D. Pa. Jan. 25, 2010)...............21

*Blessing v. Freestone*,
    520 U.S. 329 (1997)...............................................................6, 8, 12, 13, 14

*Bontrager v. Indiana Family & Social Services Admin.*,
    697 F.3d 604 (7th Cir. 2012) ...........................................................................14

*Brantley v. Maxwell-Jolly*,
    656 F. Supp. 2d 1161 (N.D. Cal. 2009)............................................................20

*BT Bourbonnais Care, LLC v. Norwood*,
   866 F.3d 815 (7th Cir. 2017) ...................................................................14

*Chaffin v. Kansas State Fair Bd.*,
   348 F.3d 850 (10th Cir. 2003) .................................................................20

*Crabtree v. Goetz*,
   No. 3:08-0939, 2008 WL 5330506 (M.D. Tenn. Dec. 19, 2008)................20

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009) ......................................................................3

*Frame v. City of Arlington*,
   657 F.3d 215 (5th Cir. 2011) (en banc) ....................................................20

*Frederick L. v. Dep't of Public Welfare*,
   364 F.3d 487 (3d Cir. 2004) .....................................................................15

*Frederick L. v. Dep't of Public Welfare*,
   157 F. Supp. 2d 509 (E.D. Pa. 2001).........................................................20

*Gonzaga Univ. v. Doe*,
   536 U.S. 273 (2002)..............................................................6, 8, 12, 13, 14

*Grammer v. John J. Kane Regional Centers-Glen Hazel*,
   570 F.3d 520 (3d Cir. 2009), *cert. denied*, 559 U.S.
   939 (2010)................................................................................................6

*Grooms v. Maram*,
   563 F. Supp. 2d 840 (N.D. Ill. 2008)..........................................................20

*Guggenberger v. Minnesota*,
   198 F. Supp. 3d 973 (D. Minn. 2016) ........................................................14

*H.E. ex rel. Emerich v. Horton*,
   No. 1:15-cv-3792-WSD, 2016 WL 6582682 (N.D. Ga.
   Nov. 7, 2016) ......................................................................................8, 12

*Helen L. v. DiDario*,
   46 F.3d 325 (3d Cir.), *cert. denied*, 516 U.S. 813 (1995) ....................16, 19

iv

*In re Asbestos Products Liability Litig. (No. VI)*,
  822 F.3d 125 (3d Cir. 2016) ............................................................4

*J.E. v. Wong*,
  125 F. Supp. 3d 1099 (D. Haw. Aug. 27, 2015).....................12, 15

*John B. v. Emkes*,
  852 F. Supp. 2d 944 (M.D. Tenn. 2012), *aff'd*,
  710 F.3d 394 (6th Cir. 2013) .......................................................8, 9

*Leonard v. Mackereth*,
  No. 11-7418, 2014 WL 512456 (E.D. Pa. Feb. 10, 2014).............5

*Lewis v. Alexander*,
  685 F.3d 325 (3d Cir. 2010), *cert. denied*, 568 U.S.
  1123 (2013)....................................................................................6

*Nat'l Organization on Disability v. Tartaglione*,
  No. 01-1923, 2001 WL 1231717 (E.D. Pa. Oct. 11, 2001).........20

*N.B. v. Hamos*,
  No. 11 C 06866, 2013 WL 6354152 (N.D. Ill. Dec. 5, 2013)....8, 9

*O.B. v. Norwood*,
  170 F. Supp. 3d 1186 (N.D. Ill.), *aff'd*, 838 F.3d
  837 (7th Cir. 2016) ...............................................................5, 12, 15

*Odi v. Alexander*,
  No. 15-4903, 2017 WL 914818 (E.D. Pa. Mar. 7, 2017)..............7

*Olmstead v. L.C.*,
  527 U.S. 581 (1999).....................................................................17

*Pediatric Specialty Care, Inc. v. Ark. Dep't of Human Services*,
  293 F.3d 472 (8th Cir. 2002) .........................................................8

*Pennsylvania, Dep't of Public Welfare v. U.S. Dep't of
Health & Human Services*,
  647 F.3d 506 (3d Cir. 2011) ..........................................................4

*Pennsylvania Pharmacists' Ass'n v. Houstoun*,
    283 F.3d 531 (3d Cir.) (en banc), *cert. denied*,
    537 U.S. 821 (2002)....................................................................4, 10

*Planned Parenthood Gulf Coast, Inc. v. Gee*,
    862 F.3d 445 (5th Cir. 2017) ..........................................................14

*Planned Parenthood Gulf Coast, Inc. v. Kliebert*,
    141 F. Supp. 3d 604 (M.D. La. 20150, *aff'd sub nom.*
    *Planned Parenthood Gulf Coast, Inc. v. Gee*, 862
    F.3d 445 (5th Cir. 2017) ..........................................................10, 12

*Planned Parenthood of Kansas v. Anderson*,
    882 F.3d 1205 (10th Cir. 2018) ......................................................14

*Romano v. Greenstein*,
    721 F.3d 373 (5th Cir. 2013) ..........................................................14

*Sabree ex rel. Sabree v. Richman*,
    367 F.3d 180 (3d Cir. 2004) ...................................... 4, 5, 7, 11, 12, 13, 14

*S.D. ex rel. Dickson v. Hood*,
    391 F.3d 581 (5th Cir. 2004) ............................................................5

*South Camden Citizens in Action v. New Jersey Dep't*
*of Environmental Protection*,
    274 F.3d 771 (3d Cir. 2001), *cert. denied*,
    536 U.S. 939 (2002)......................................................................19

*Three Rivers Center for Independent Living v. Housing Auth.*,
    382 F.3d 412 (3d Cir. 2004) ..........................................................21

*Zatuchni v. Richman*,
    No. 07-cv-4600, 2008 WL 3408554 (E.D. Pa. Aug. 12, 2008) ...................21

## Statutes, Regulations, and Legislative History

29 U.S.C. § 794 ..................................................................................3, 17

29 U.S.C. § 794(a) ...............................................................................15

42 U.S.C. § 1396a(a) ...........................................................................11

42 U.S.C. § 1396a(a)(8) ...................................................................4, 6, 7

42 U.S.C. § 1396a(a)(10)(A) .............................................................5, 7

42 U.S.C. § 1396a(a)(30)(A) ......................................................10, 11, 14

42 U.S.C. § 1396a(a)(43) ..........................................................5, 7, 8, 12

42 U.S.C. § 1396c ..................................................................7, 11, 12

42 U.S.C. § 1396d(a) .............................................................................5

42 U.S.C. § 1396d(r)(5) .........................................................................5

42 U.S.C. § 1983 ................................... 3, 6, 7, 8, 9, 10, 12, 13, 14

42 U.S.C. §§ 12111-12117 ...................................................................18

42 U.S.C. §§ 12131-12134 .....................................................................3

42 U.S.C. § 12132 ...................................................................15, 17, 20

42 U.S.C. § 12134(a) ...........................................................................15

42 U.S.C. § 12134(b) ...........................................................................16

42 U.S.C. §§ 12181-12189 ...................................................................18

42 U.S.C. § 12182(b)(1)(A)-(D) ...........................................................18

42 U.S.C. § 12201(a) ...........................................................................18

28 C.F.R. § 35.130 ...................................................................19, 20, 21

28 C.F.R. § 35.130(d) ..........................................................................21

28 C.F.R. Pt. 41 ................................................................................................16

28 C.F.R. § 41.51 ............................................................................................19

62 P.S. § 701 .....................................................................................................1

62 P.S. § 2305 ...................................................................................................1

55 Pa. Code § 101(e) .........................................................................................1

55 Pa. Code § 3130.12 ......................................................................................1

H.R. Rep. No. 101-485, pt. 2 (1990), *reprinted in*, 1990
U.S.C.C.A.N. 303 ............................................................................................18

H.R. Rep. No. 101-485, pt. 3 (1990), *reprinted in*, 1990
U.S.C.C.A.N. 445 ............................................................................................18

## COUNTERSTATEMENT OF THE
## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are six youths with mental health disabilities who have been adjudicated dependent and are eligible for Medical Assistance ("Medicaid") services. Compl. ¶¶ 10-14, 54, 82-83, 93, 96, 114, 116, 125-126, 134, 136, 146, 148. Plaintiffs filed this putative class action lawsuit against Defendants Department of Human Services and Acting Secretary Miller (collectively, "DHS"), to challenge DHS's failure to assure that they have non-discriminatory access to medically necessary mental health services in integrated settings. *See id.* ¶¶ 1-8, 15-17.

DHS administers the Children and Youth Services ("CYS") system for Pennsylvania youth who have been adjudicated dependent, such as the Plaintiffs and putative class members. Compl. ¶¶ 1, 3, 29, 32; 62 P.S. § 701. DHS supervises county CYS agencies' provision of services and is responsible to regulate, supervise, and fund CYS services, including providing: substitute care for children who cannot remain in their homes; court-ordered services for delinquent and dependent youth; and services to overcome problems arising from delinquency and dependency. Compl. ¶¶ 34-36; 62 P.S. § 2305; 55 Pa. Code § 3130.12.

DHS also administers Pennsylvania's Medicaid program. Compl. ¶ 29; 55 Pa. Code § 101.1(e). DHS is legally required to provide Medicaid-eligible youth, such as Plaintiffs and putative class members, with an array of mental health

services, including community-based services, when they are medically necessary. Compl. ¶ 3, 44-46, 53-54; *see also* discussion, *infra,* at 4-5.

As dependent, Medicaid-eligible youth with mental health disabilities, Plaintiffs are entitled to receive the mental health services they need – including services in integrated, community-based settings – through both DHS's CYS and Medicaid systems.  *See* Compl. ¶¶ 3-6, 32, 55.  Yet, Plaintiffs have been unable to access such medically necessary mental health services in integrated settings; instead, they have been subject to unnecessary institutionalization and been denied access to services they need to achieve permanency and stability based on their disabilities or the severity of their disabilities.  *Id.* ¶¶ 10-14, 81-156.

Plaintiffs' situations are not unique.  There are hundreds of other dependent, Medicaid-eligible children in Pennsylvania without access to medically necessary mental health services.  Compl. ¶¶ 2-6, 18, 58-64, 76-77.  Due to the failure of DHS, through its CYS and Medicaid systems, to provide them with appropriate placements and services, many of these vulnerable children are placed and remain unnecessarily confined in large, segregated facilities – some out-of-state far from any connections to family and friends – or they are bounced from placement to placement.  *Id.* ¶¶ 4-6, 65-72.  Dependent children with disabilities are less likely than non-disabled dependent children to have access to kinship or foster care placements and to achieve stability and permanency whether through family

reunification or adoption.  Compl. ¶¶ 58-60.  Not surprisingly, the outcomes for these children are poor, including mental health deterioration, criminal justice involvement, homelessness, and, perhaps worst of all, reaching adulthood with no family or community connections.  *See id.* ¶ 4, 80.

Plaintiffs allege that DHS violates 42 U.S.C. § 1983 ("Section 1983") and various provisions of Title XIX of the Social Security Act ("Title XIX"), the federal Medicaid law, by failing to assure that they and putative class members have timely access to medically necessary mental health services.  Compl. ¶¶ 163-172.  Plaintiffs also allege that DHS's actions and omissions discriminate against them on the basis of disability in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12134, and Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794.  Compl. ¶¶ 173-184.

## ARGUMENT

### I.  STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  In determining whether Plaintiffs have stated a claim, the Court "must accept as true all plausible facts alleged in" the Complaint "and draw all reasonable inferences in [their] favor." *In*

3

*re Asbestos Products Liability Litig. (No. VI)*, 822 F.3d 125, 131 (3d Cir. 2016).

Plaintiffs have asserted plausible claims for relief under Title XIX, the ADA, and

the RA.

## II.  PLAINTIFFS CAN ENFORCE TITLE XIX'S ENTITLEMENT, EPSDT SCREENING, AND REASONABLE PROMPTNESS MANDATES THROUGH SECTION 1983.

### A.  Title XIX Requires DHS to Provide Plaintiffs and Putative Class Members with Medicaid Services with Reasonable Promptness.

Medicaid, established by Title XIX, is a federal-state program "'under which

the federal government furnishes funding to states for the purpose of providing

medical assistance to low-income persons.'" *Sabree ex rel. Sabree v. Richman*,

367 F.3d 180, 182 (3d Cir. 2004) (citation omitted).  States that accept federal

funding must adopt and implement a State Plan.  *Id.*  Pennsylvania participates in

the federal Medicaid program, which is administered by DHS (formerly the

Department of Public Welfare).  *Pennsylvania, Dep't of Public Welfare v. U.S.*

*Dep't of Health & Human Services*, 647 F.3d 506, 508 (3d Cir. 2011).

Under Title XIX, certain types of Medicaid services are mandatory and must

be included in the State Plan while other services are optional so that the state may,

but is not required, to cover them.  *See Pennsylvania Pharmacists Ass'n v. Hous-*

*toun*, 283 F.3d 531, 533 (3d Cir.) (en banc), *cert. denied*, 537 U.S. 821 (2002).

Title XIX further dictates that the state provide all Medicaid services to which a

beneficiary is entitled with "reasonable promptness."  42 U.S.C. § 1396a(a)(8).

4

Medicaid beneficiaries thus have an entitlement to receive necessary Medicaid services with reasonable promptness. *See Sabree*, 367 F.3d at 190; *Leonard v. Mackereth*, No. 11-7418, 2014 WL 512456, at *8 (E.D. Pa. Feb. 10, 2014) (Att. 1).

Mandatory Medicaid services include Early and Periodic Screening, Diagnostic, and Treatment ("EPSDT") services for beneficiaries under age 21. 42 U.S.C. §§ 1396a(a)(10)(A) (requiring, *inter alia*, states to cover the services in Section 1905(a)(4)(B), 42 U.S.C. § 1396d(a)(4)(B), which is EPSDT); *S.D. ex rel. Dickson v. Hood*, 391 F.3d 581, 586 (5th Cir. 2004). The types of Medicaid services covered by EPSDT are extensive, encompassing any necessary services available under 42 U.S.C. § 1396d(a). 42 U.S.C. § 1396d(r)(5); *O.B. v. Norwood*, 170 F. Supp. 3d 1186, 1199 n.8 (N.D. Ill.), *aff'd* 838 F.3d 837 (7th Cir. 2016). In addition to the entitlement to EPSDT services established in Section 1396a(a)(10)(A), Title XIX separately also requires states to provide screenings of beneficiaries under the age of 21 and "corrective treatment" when screening identifies services are needed. 42 U.S.C. § 1396a(a)(43).

Plaintiffs allege that DHS's failure to assure timely access to medically necessary mental health services violates the following provisions of Title XIX: (1) 42 U.S.C. § 1396a(a)(10)(A), the "entitlement mandate," which requires DHS to provide necessary EPSDT services; (2) 42 U.S.C. § 1396a(a)(43), the "EPSDT screening mandate," which requires DHS to provide health screenings of and

corrective treatment for Medicaid beneficiaries under 21; and (3) 42 U.S.C. §

1396a(a)(8), the "reasonable promptness mandate," which requires DHS to provide

Medicaid services with reasonable promptness.  Compl. ¶¶ 163-172.  Contrary to

DHS's argument, Defs.' Br. at 5-13, it has been and remains beyond dispute that

Medicaid beneficiaries can enforce these Title XIX mandates through Section

1983, as Plaintiffs seek to do here.

### B.  It Is Well-Settled that Medicaid Beneficiaries Can Enforce Title XIX's Entitlement, EPSDT Screening, and Reasonable Promptness Mandates in Section 1983 Actions.

As the Third Circuit has recognized, the Supreme Court in *Blessing v.*

*Freestone*, 520 U.S. 329 (1997), and *Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002),

established the framework to determine whether a federal statutory provision can

be enforced through Section 1983, requiring that:

> (1) the statutory provision must benefit the plaintiffs with a right
> unambiguously conferred by Congress; (2) the right cannot be so
> "vague and amorphous" that its enforcement would strain
> judicial competence; and (3) the statute must impose a binding
> obligation on the States.

*Lewis v. Alexander*, 685 F.3d 325, 344 (3d Cir. 2012) (citations omitted), *cert.*

*denied*, 568 U.S. 1123 (2013).  If these criteria are met, there is a presumption that

a plaintiff can enforce the statutory provision through Section 1983, which can be

rebutted only if Congress "'specifically foreclosed a remedy under § 1983.'"

*Grammer v. John J. Kane Regional Centers-Glen Hazel*, 570 F.3d 520, 526 (3d

Cir. 2009) (quoting *Gonzaga Univ.*, 536 U.S. at 285)), *cert. denied*, 559 U.S. 939 (2010).

Applying this framework, the Third Circuit definitively held that two of the Title XIX provisions invoked by Plaintiffs in this case – the entitlement and reasonable promptness mandates established by, respectively, 42 U.S.C. § 1396a(a)(10) and § 1396a(a)(8) – can be enforced by Medicaid beneficiaries through Section 1983.  *Sabree*, 367 F.3d at 189-94; *accord Lewis*, 685 F.3d at 344; *Odi v. Alexander*, No. 15-4903, 2017 WL 914818, at *10 (E.D. Pa. Mar. 7, 2017) (Att. 2).  As the Third Circuit concluded:  "Congress clearly and unambiguously conferred the rights of which plaintiffs have allegedly been deprived by Pennsylvania, and has not precluded individual enforcement of those rights." *Sabree*, 367 F.3d at 194.  The Court further held that 42 U.S.C. § 1396c, which authorizes the Secretary of Health and Human Services to withhold federal Medicaid funds if the state fails to substantially comply with Title XIX,  did not override the "'rights-creating language'" of Sections 1396a(a)(10) and 1396a(a)(8). *Id.* at 191-92.  "[I]t is evident, at least to us, that the statutory language, despite countervailing structural elements of the statute, unambiguously confers rights which plaintiffs can enforce." *Id.* at 192.

Although the Third Circuit has not addressed the enforceability of the EPSDT screening mandate, 42 U.S.C. § 1936a(a)(43), courts elsewhere have held

7

that Medicaid beneficiaries can use Section 1983 to enforce it. *See Pediatric Specialty Care, Inc. v. Ark. Dep't of Human Services*, 293 F.3d 472, 478-79 (8th Cir. 2002); *H.E. ex rel. Emerich v. Horton,* No. 1:15-cv-3792-WSD, 2016 WL 6582682, at *5 (N.D. Ga. Nov. 7, 2016) (collecting cases) (Att. 3); *N.B. v. Hamos*, No. 11 C 06866, 2013 WL 6354152, at *3-*6 (N.D. Ill. Dec. 5, 2013) (Att. 4); *John B. v. Emkes*, 852 F. Supp. 2d 944, 947-50 (M.D. Tenn. 2012), *aff'd,* 710 F.3d 394 (6th Cir. 2013). This conclusion is sound since the EPSDT screening mandate satisfies the three-part *Blessing-Gonzaga* test.

- First, Section 1396a(a)(43) reflects that Congress unambiguously conferred on Medicaid beneficiaries under 21 a right to receive screening services upon request and corrective treatment to address any needs disclosed during screenings. This Section is in the same section of Title XIX as the entitlement and reasonable promptness mandates, detailing what the state "must provide." *See N.B.*, 2013 WL 6354152, at *3. Moreover, Section 1396a(a)(43) does not have an "aggregate" focus, but rather is focused on specific individuals, *i.e.,* on EPSDT-eligible Medicaid beneficiaries. *John B.*, 852 F. Supp. 2d at 949.

- Second, Section 1396a(a)(43) is not vague or amorphous. *N.B.*, 2013 WL 6354152, at *4; *John B.*, 852 F. Supp. 2d at 949. Screenings and

8

corrective action are either provided or they are not. The requirement

of screenings and corrective action is not so complex as to be beyond

judicial competence to enforce.

- Third, the provision imposes a binding obligation on the state since it

   uses mandatory, rather than precatory, language (*i.e.*, the state "must

   provide"). *N.B.*, 2013 WL 6354152, at \*4; *John B.*, 852 F. Supp. 2d

   at 949.

### C. *Armstrong* Does Not Support DHS's Assertion that Plaintiffs Cannot Enforce Title XIX's Entitlement, EPSDT Screening, and Reasonable Promptness Mandates in Section 1983 Actions.

#### 1. The Majority Opinion in *Armstrong* Does Not Override the *Blessing-Gonzaga* Framework.

Faced with binding precedent in this Circuit that Medicaid beneficiaries can

pursue private rights of action to enforce Title XIX's entitlement and reasonable

promptness provisions through Section 1983 and the overwhelming authority

supporting such beneficiaries' ability to enforce Title XIX's EPSDT screening

mandate through Section 1983, DHS argues that the Supreme Court's decision in

*Armstrong v. Exceptional Child Center, Inc.*, ___ U.S. ___, 135 S. Ct. 1378 (2015),

abrogates all of those rulings and precludes Medicaid beneficiaries' use of Section

1983 to enforce any Title XIX provisions. Defs.' Br. at 8-13. *Armstrong* does not

support DHS's sweeping assertion.

In *Armstrong*, Medicaid service providers sued Idaho to challenge their reimbursement rates, arguing that the rates were contrary to 42 U.S.C. § 1396a(a)(30)(A), which provides that rates should be "consistent with efficiency, economy, and quality of care" while preventing unnecessary utilization. Since many courts had previously ruled that providers could not use Section 1983 to enforce Section 1396a(a)(30)(A), the providers did not assert a claim under Section 1983. *Armstrong*, 135 S. Ct. at 1386 n.*. Rather, the providers asserted that they could sue under the Supremacy Clause and under general principles of "equity" to enforce Section 1396a(a)(30)(A). The Court rejected those arguments. *Id.* at 1383-87. "Neither revolutionary nor anomalous, *Armstrong* actually aligned with the majority of federal courts in its construction of Section 1396a(a)(30)(A) as to Medicaid providers." *Planned Parenthood Gulf Coast, Inc. v. Kliebert*, 141 F. Supp. 3d 604, 642 (M.D. La. 2015), *aff'd sub nom. Planned Parenthood Gulf Coast, Inc. v. Gee*, 862 F. 3d 445, 461-62 (5th Cir. 2017). Indeed, the Third Circuit had long held that providers could not use Section 1983 to enforce Section 1396a(a)(30)(A). *Pennsylvania Pharmacists' Ass'n*, 283 F.3d at 534-44. In sum, *Armstrong* simply did not address whether Medicaid beneficiaries (as opposed to providers) could use Section 1983 (rather than the Supremacy Clause or "equity") to enforce any Title XIX provisions, particularly those other than Section 1396a(a)(30)(A).

10

While *Armstrong* noted that the remedy for noncompliance with Medicaid is the withholding of federal funds by the Secretary of Health and Human Services under Section 1396c, *id.* at 1385, it did not conclude that the availability of such an administrative remedy *per se* precluded the availability of equitable relief in private actions to enforce all Title XIX provisions.  Rather, it emphasized that the "sheer complexity" of Section 1396a(a)(30)(A), a provision not at issue in this case, was "judicially unadministrable," so that when combined with the availability of an administrative remedy, the exercise of equitable jurisdiction to enforce that provision would be inappropriate.  *Id*.

DHS, however, does not merely rely upon the holding in *Armstrong* that 'judicially unadministrable" provisions of Title XIX cannot be privately enforced. Instead, it cites extensively to statements in Section IV of *Armstrong*.  *See* Defs.' Br. at 8, 10, 11, 12.  Section IV suggests that 42 U.S.C. § 1396a(a) as a whole does not reflect "rights-creating" language needed for a private right of action because "[i]t is phrased as a directive to the federal agency charged with approving state Medicaid plans, not as a conferral of the right to sue upon the beneficiaries of the State's decision to participate in Medicaid" and that the sole means for enforce-ment is withholding federal funds.  *Armstrong*, 135 S. Ct. at 1387-88.  Relying on the language in Section IV, DHS argues that *Sabree* is not valid post-*Armstrong* because the entitlement and reasonable promptness provisions are merely

directives to the federal agency and the sole remedy for violation is withholding federal funds. Defs.' Br. at 11-12. Likewise, DHS asserts that the pre-*Armstrong* rulings holding that the EPSDT screening provision, Section 1396a(a)(43)(A), is privately enforceable by Medicaid beneficiaries do not survive *Armstrong* because that provision, too, "is directed toward the regulated entity" and that Section 1396c provides a comprehensive administrative remedy by requiring withholding of federal funds. Defs.' Br. at 10.

There is one glaring flaw in DHS's analysis – Section IV of *Armstrong* does not reflect the opinion of the Court. A majority of the Court did not join Section IV or endorse the statements therein. Section IV is thus a minority opinion. Since the language in Section IV does not reflect the opinion of the Court, DHS's reliance on that language throughout its argument is unavailing. Indeed, lower courts have uniformly concluded that Section IV is not binding, so that the *Blessing-Gonzaga* framework, as used in *Sabree* and its progeny, remains the valid test to assess the enforceability of Title XIX provisions through Section 1983. *See O.B.*, 170 F. Supp. 3d at 1191 & n.3; *H.E.*, 2016 WL 6582682, at *6; *Planned Parenthood Gulf Coast, Inc.*, 141 F. Supp. at 641; *J.E. v. Wong*, 125 F. Supp. 3d 1099, 1107 (D. Haw. Aug. 27, 2015).

## 2. *Armstrong* Does Not Render the Entitlement, EPSDT Screening, and Reasonable Promptness Mandates Unenforceable by Medicaid Beneficiaries in Section 1983 Actions.

Examining the *holding* in *Armstrong* (rather than the language of the minority in Section IV), it is plain that the decision does not represents a sea change in the law, as DHS suggests. In fact, it represents no change at all.

The gist of the holding in *Armstrong* is that Title XIX provisions that are "judicially unadministrable" cannot be privately enforced by Medicaid providers in equitable actions. DHS contends that the entitlement, reasonable promptness, and EPSDT screening provisions are "judicially unadministrable" because they are "broad" and do not specifically detail how the state is to accomplish them. *See* Defs.' Br. at 10, 12, 13.

The question of whether a statutory provision is judicially administrable was part of the *Blessing-Gonzaga* framework. Under that framework, a statutory provision will be enforceable under Section 1983 only if it is not "'vague and amorphous' as to strain judicial competence." *Lewis*, 685 F.3d at 344. In other words, prior to *Armstrong* courts could only hold a statutory provision to be enforceable through Section 1983 if the standards were sufficiently clear that the judiciary could apply them. Accordingly, courts that previously held that the Title XIX provisions at issue here satisfied the *Blessing-Gonzaga* framework – including the Third Circuit in *Sabree* – determined that the provisions are capable

13

of being interpreted and applied by the courts and, thus, are judicially administrable.  *Sabree*, 367 F.3d at 189 (holding that "the rights sought to be enforced by [Sections 1396a(a)(10) and 1396a(a)(8)] are specific and enumerated, not 'vague and amorphous.'"); *Romano v. Greenstein,* 721 F.3d 373, 378-79 (5th Cir. 2013) (same re Section 1396a(a)(8)); *Bontrager v. Indiana Family & Social Services Admin.*, 697 F.3d 604, 607 (7th Cir. 2012) (holding that Section 1396a(a)(10) meets *Blessing-Gonzaga* standard, including that it is not unduly vague and amorphous).

Given that *Armstrong* did not overrule the *Blessing-Gonzaga* framework and merely applied that framework in determining that Section 1396a(a)(30)(A) was too "vague and amorphous" for judicial enforcement, courts post-*Armstrong* have rejected arguments that its holding bars Medicaid beneficiaries from using Section 1983 to enforce provisions of Title XIX that had previously been held enforceable under *Blessing-Gonzaga*.  *See Planned Parenthood of Kansas v. Anderson,* 882 F.3d 1205, 1224-29 (10th Cir.); *BT Bourbonnais Care, LLC v. Norwood*, 866 F.3d 815, 820-21 (7th Cir. 2017); *Planned Parenthood of Gulf Coast v. Gee*, 862 F.3d 445, 461-62 (5th Cir. 2017).  Most significantly, courts have held post-*Armstrong* that Medicaid beneficiaries can still pursue Section 1983 claims to enforce the entitlement, reasonable promptness, and EPSDT screening mandates, as the Plaintiffs seek to do in this case.  *Guggenberger v. Minnesota*, 198 F. Supp. 3d

14

973, 1005-07 (D. Minn. 2016) (reasonable promptness); *O.B.*, 170 F.3d at 1192 (entitlement and reasonable promptness); *J.E.*, 125 F. Supp. 3d at 1102, 1106-08 (entitlement, reasonable promptness, and EPSDT screening).

### III.  PLAINTIFFS HAVE A PRIVATE RIGHT OF ACTION TO ENFORCE THEIR ADA AND RA CLAIMS.

#### A.  The ADA's and RA's Statutory and Regulatory Framework.

Title II of the ADA provides that public entities, such as DHS, may not exclude from participation in or deny the benefits of its services, programs, or activities to individuals on the basis of their disabilities or otherwise subject such individuals to discrimination.  42 U.S.C. § 12132.  This provision "largely mirrors Section 504 of the [RA]," 29 U.S.C. § 794(a), which applies to federally-funded programs, and thus the Third Circuit has "construed the provisions of the RA and the ADA similarly in light of their close similarity of language and purpose." *Frederick L. v. Dep't of Public Welfare*, 364 F.3d 487, 491 (3d Cir. 2004).[1]

Rather than delineate the specific forms of discrimination barred by Title II of the ADA, Congress instead directed the United States Department of Justice (DOJ) to promulgate regulations to implement Title II.  42 U.S.C. § 12134(a).  In doing so, Congress specifically required DOJ to assure that its Title II regulations

---

[1]  Since the ADA and RA are construed similarly, Plaintiffs' references to the "ADA" will mean both the ADA and RA.

were consistent with specified regulations promulgated to implement Section 504 of the RA, primarily the RA's "coordination regulations," 28 C.F.R. Pt. 41.  42 U.S.C. § 12134(b).   The Third Circuit has thus held that "because Congress mandated that the ADA regulations be patterned after the section 504 coordination regulations, the former [ADA] regulations have the force of law."  *Helen L. v. DiDario*, 46 F.3d 325, 332 (3d Cir.), *cert. denied*, 516 U.S. 813 (1995).

DHS contends that Plaintiffs' ADA and RA claims must be dismissed because they are based on regulations which are not privately enforceable.  Defs.' Br. at 13-20.  DHS's argument must be rejected because it is based on the erroneous premise that Plaintiffs' claims are not directly authorized by the statute's broad prohibition on discrimination (regardless of any regulations).  Even if the claims were not encompassed within the statutory language, Plaintiffs could still rely on the regulations either as "authoritative interpretations" or, at minimum, as provisions that define and flesh out the statute.

### B.  Plaintiffs' ADA and RA Claims Are Privately Enforceable Since They Arise Directly Under the Statute.

There is no dispute that Title II of the ADA can be enforced through a private right of action, *Barnes v. Gorman*, 536 U.S. 181, 184-85 (2002), so that Plaintiffs can pursue claims to the extent that they arise under Title II.  The statutory language of the broad anti-discrimination language in Title II of the ADA

is sufficient, by itself, to support Plaintiffs' claims, regardless of whether Plaintiffs can rely on the Title II regulations.

- Plaintiffs contend that DHS has denied them equal access to CYS services based on their disabilities by administering its CYS program in a manner that denies dependent youth with mental health disabilities equal opportunity to participate in and benefit from child welfare services based on their disabilities or the severity of their disabilities. *See* Compl. ¶ 179. This claim falls well within the scope of the statutory language, which prohibits denials of the benefits of a service, program or activity based on disability. 42 U.S.C. § 12132; 29 U.S.C. § 794.

- Plaintiffs contend that DHS violated the ADA's "integration mandate" by failing to provide them with integrated, community-based services. Compl. ¶ 183. The Supreme Court recognized that unnecessarily segregating individuals with disabilities is discriminatory. *Olmstead v. L.C.*, 527 U.S. 581, 598, 600-01 (1999); *accord Benjamin v. Dep't of Public Welfare*, 768 F. Supp. 2d 747, 752-54 (M.D. Pa. 2011) (Jones, J.). As such, this claim can proceed directly under the statute.

- Plaintiffs contend that DHS has failed to make reasonable modifications. Compl. ¶ 182. The Supreme Court interpreted the RA to

17

require "reasonable modifications" that do not result in a fundamental alteration if necessary for meaningful access. *See Alexander v. Choate*, 469 U.S. 287, 300-301 & n.20 (1985). Since Congress directed that the ADA should not be construed to "apply a lesser standard" than the RA, 42 U.S.C. § 12201(a), Title II's statutory prohibition on discrimination similarly includes a failure to make reasonable modifications.

Any doubt that Plaintiffs' claims are supported by the statute itself (regardless of the regulations) is put to rest by the legislative history of the ADA. Congress made clear that Title II of the ADA should be construed to incorporate the specific non-discrimination requirements of Titles I and III of the ADA, 42 U.S.C. §§ 12111-12117, 12181-12189. H.R. Rep. No. 101-485, pt. 2, at 84 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 367; H.R. Rep. No. 101-485, pt. 3, at 51 (1990), *reprinted in* 1990 U.S.C.C.A.N. 445, 474. The claims advanced by Plaintiffs are consistent with the statutory rights set forth in Title III, 42 U.S.C. § 12182(b)(1)(A)-(D), and as such they can pursued directly under Title II of the ADA.

### C.  Plaintiffs Can Rely on the Regulations Because They <br> Are Independently Enforceable and Flesh Out the Statute.

Even if the ADA's and RA's broad statutory language did not fully support

Plaintiffs' claims, they could still rely on the regulations in this case.  In *Alexander*

*v. Sandoval*, 532 U.S. 275 (2001), the Court made clear that when Congress

intends a statute to be enforced through a private right of action, as it has with

respect to the ADA and the RA, it intends that authoritative regulatory interpreta-

tions of that statute may be enforced as well.  *Id.* at 284.  The ADA regulations that

support Plaintiffs' claims are found in 28 C.F.R. § 35.130, which DOJ based – as

directed by Congress – on the RA's "coordination" regulations, 28 C.F.R. § 41.51.

As set forth above, the Third Circuit in *Helen L.*, 46 F.3d at 332, explicitly

concluded that DOJ's Title II regulations adopting the RA's coordination

regulations have "the force of law."  Thus, the ADA regulations cited by Plaintiffs

are authoritative regulatory interpretations that can be independently enforced by

Plaintiffs.

Moreover, even if the regulations are not "independently" enforceable, there

is nothing that precludes Plaintiffs or the Court from relying on them to interpret

Title II of the ADA.  As the Third Circuit explained, federal regulations that

simply "define or flesh out the content of a specific right" under a statute can be

relied upon to enforce that statutory right."  *South Camden Citizens in Action v.*

*New Jersey Dep't of Environment Protection*, 274 F.3d 771, 790 (3d Cir. 2001),

*cert. denied*, 536 U.S. 939 (2002).  The regulatory provisions cited by Plaintiffs stem from 28 C.F.R. § 35.130, which is titled "[g]eneral prohibitions against discrimination."   Those provisions "define and flesh out" the ADA's statutory prohibition on "discrimination" in 42 U.S.C. § 12132.

The weight of authority post-*Sandoval* supports the conclusion that subsections of 28 C.F.R. § 35.130, including those Plaintiffs cite here, are privately enforceable.  *See Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1065-67 (9th Cir. 2010) (28 C.F.R. § 35.130(b)(1)); *Brantley v. Maxwell-Jolly*, 656 F. Supp. 2d 1161, 1175-76 (N.D. Cal. 2009) (28 C.F.R. § 35.130(b)(3)); *Crabtree v. Goetz*, No. 3:08-0939, 2008 WL 5330506, at *24 (M.D. Tenn. Dec. 19, 2008) (Att. 5) (28 C.F.R. §§ 35.130(b)(7) concerning reasonable accommodations and 35.130(d) concerning integration); *Grooms v. Maram*, 563 F. Supp. 2d 840, 852 n.2 (N.D. Ill. 2008) (28 C.F.R. § 35.130(d) concerning integration); *Frederick L. v. Dep't of Public Welfare*, 157 F. Supp. 2d 509, 538-39 (E.D. Pa. 2001) (28 C.F.R. § 35.130(d) concerning integration).[2]   Indeed, DHS moved to dismiss the integration

---

[2]  Courts similarly rejected *Sandoval* challenges in Title II cases involving DOJ's physical accessibility regulations.  *See Frame v. City of Arlington,* 657 F.3d 215, 223-36 (5th Cir. 2011) (en banc); *Ability Center of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 907-13 (6th Cir. 2004); *Chaffin v. Kansas State Fair Bd.*, 348 F.3d 850, 856-59 (10th Cir. 2003); *Nat'l Organization on Disability v. Tartaglione*, No. 01-1923, 2001 WL 1231717, at *6-*7 (E.D. Pa. Oct. 11, 2001) (Att. 6).

mandate claim in *Benjamin* on the basis, *inter alia,* that the plaintiffs could not enforce the regulation, 28 C.F.R. § 35.130(d), Br. in Support of Defs.' Motion to Dismiss at 7, *Benjamin v. Dep't of Public Welfare*, No. 1:09-cv-1182-JEJ, ECF No. 21 (Attachment 7), but this Court denied that motion.  *Benjamin v. Dep't of Public Welfare*, No. 1:09-cv-1182-JEJ, Mem. and Order (M.D. Pa. Jan. 25, 2010), ECF No. 38 (Attachment 8).[3]

---

[3]  DHS's reliance on *Three Rivers Center for Independent Living v. Housing Auth.*, 382 F.3d 412 (3d Cir. 2004), and *Zatuchni v. Richman*, No. 07-cv-4600, 2008 WL 3408554 (E.D. Pa. Aug. 12, 2008) (Att. 9), Defs.' Br. at 17-19, is misplaced.  In *Three Rivers*, the court held that a plaintiff could not privately enforce Section 504 regulations requiring that housing authorities assure that five percent of new or substantially altered housing is accessible for people with mobility disabilities and two percent is accessible to people with visual disabilities because the regulations did not articulate "personal rights," *i.e.*, they had an aggregate rather than individual focus.  *Three Rivers,* 382 F.3d at 416, 429-30.  In contrast with the percentage regulations at issue in *Three Rivers,* the regulations here are all directly focused on the rights of "individuals with disabilities" so each and every person with a disability has those rights  28 C.F.R. § 35.130.  Thus, *Three Rivers* is inapposite and *Zatuchni*'s extension of it to the ADA to the integration regulation is erroneous and should be rejected.

## **CONCLUSION**

For all the reasons set forth above, Plaintiffs respectfully request that the

Court deny Defendants' Motion to Dismiss the Complaint.

Respectfully submitted,

Dated:  March 20, 2018                By:    /s/ Shanon S. Levin
                                            Kelly Darr (PA 80909)
                                            Shanon S. Levin (PA 86040)
                                            Rachel Mann (PA 49267)
                                            Gabriella Labella (PA 87858)
                                            Disability Rights Pennsylvania
                                            1315 Walnut Street, Suite 500
                                            Philadelphia, PA  19107-4705
                                            (215) 238-8070
                                            (215) 772-3126
                                            slevin@disabilityrightspa.org

                                            Jeni Hergenreder (PA 208282)
                                            Disability Rights Pennsylvania
                                            429 Fourth Avenue, Suite 701
                                            Pittsburgh, PA  15219-1505
                                            (412) 391-5225
                                            (412) 467-8940 (fax)

                                            Counsel for Plaintiffs

## **LOCAL RULE 7.8(b)(2) CERTIFICATE**

I certify under penalty of perjury that the Brief in Support of Plaintiffs'

Motion for Class Certification complies with Local Rule 7.8(b)(2) of this Court

because, based on the word processing system used to prepare the Brief, Word

2013, the Brief contains 4,834 words (excluding the Table of Contents and Table

of Citations).


Dated:  March 20, 2018                    /s/ Shanon S. Levin
                                          Shanon S. Levin

## CERTIFICATE OF SERVICE

I, Robin Resnick, hereby certify that a true and correct copy of the Brief in Opposition to Defendants' Motion to Dismiss and proposed Order were filed with the Court's ECF system on March 20, 2018 and is available for viewing and downloading from the ECF system by the following counsel who consented to electronic service:

Matthew J. McLees, Deputy Chief Counsel
Kathleen A. Grogan, Deputy Chief Counsel
Commonwealth of Pennsylvania
Department of Human Services
3rd Floor West, Health & Welfare Building
625 Forster Street
Harrisburg, PA  17120


/s/ Robin Resnick
Robin Resnick