## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

S.R., by and through his next friend, Phillip :     1:17-cv-2332
Rosenbauer, THEODORE SMITH, by and :
through his next friend, Ashley Maddison, :
S.H., by and through her next friend, Julia :     Hon. John E. Jones III
Shmilovich, M.T., by and through his next :
friend, Ashley Maddison, N.C., by and :
through his next friend, Sue Walther, :
CHRYSTAL STEWARD, by and through :
her next friend, Deborah Fegan, on behalf, :
of themselves and all others similarly :
situated, :
                         :
           Plaintiffs, :
                         :
      v. :
                         :
PENNSYLVANIA DEPARTMENT OF :
HUMAN SERVICES and TERESA , :
MILLER, in her capacity as Secretary of the :
Department of Human Services, :
                         :
          Defendants, :

## MEMORANDUM & ORDER

### April 3, 2018

Presently pending before the Court is the Plaintiffs' motion for class

certification.[1] (the "Motion") (Doc. 3). Named Plaintiffs ("Plaintiffs") seek class

certification pursuant to Federal Rule of Civil Procedure 23 and filed the instant

---

[1] Also pending is Defendants' motion to dismiss (Doc. 15), which is not yet ripe and we do not address in this memorandum and order.

Motion on December 22, 2017, along with a brief in support. (Docs. 3, 4).

Defendants Pennsylvania Department of Human Services ("DHS") and Teresa

Miller, as Acting Secretary of the DHS (collectively, Defendants), filed a brief in

opposition on March 19, 2018. (Doc. 17). Plaintiffs filed a brief in reply on April

2, 2018. (Doc. 21). The Motion is therefore ripe for our review. For the reasons

that follow, the Motion shall be granted.

## I.     BACKGROUND

On December 18, 2017, Plaintiffs commenced this action, by and through

their next friends, on behalf of themselves and all others similarly situated. (Doc.

1). The complaint alleges that DHS has failed to provide the required appropriate

services to dependent children with diagnosed mental health disabilities in

Pennsylvania. The following facts are derived from the complaint.

DHS, through the Child Welfare system and its Office of Medical

Assistance Programs ("Medical Assistance"), is responsible for providing

appropriate mental health care. (*Id*. at ¶ 3). The complaint paints a picture of the

sad reality for various dependent youths in Pennsylvania. Many dependent children

with mental disabilities end up in large, congregate facilities for years while they

wait for appropriate placement from DHS. (*Id*. at ¶ 4). Others end up waiting for

months or years in inappropriate settings, such as psychiatric hospitals, juvenile

detention facilities, and residential treatment facilities ("RTFs") while they wait for

placement from DHS. (*Id*. at ¶ 5). Each of the named Plaintiffs in this action has been diagnosed with mental health disabilities and has been adjudicated dependent. (*Id*. at ¶ 9). They are all eligible for medical assistance from DHS. (*Id*. at ¶ 54).

Plaintiff S.R. is a ten year old dependent child with mental health disabilities. (*Id*. at ¶ 10). He has been in a RTF waiting for placement from DHS for over three years. (*Id*.). His psychiatrist notes "lack of discharge options" as a barrier to his treatment. (*Id*. at ¶ 10). Though the RTF feels that S.R. has maximized his treatment and plans to discharge him when he has been assigned placement, DHS has not provided an appropriate family or community-based placement for S.R. with adequate services. (*Id*.).

Plaintiff Teddy Smith is an eighteen year old with mental illnesses who spent several months unnecessarily in a juvenile detention center awaiting an appropriate placement from DHS. (*Id*. at ¶ 11). When Smith was moved to a secure state-operated youth development center, he was assaulted by staff within the first two weeks. (*Id*.). Plaintiffs S.H., a fifteen year old with mental illnesses, and M.T., a sixteen year old with mental illness, are in the same local juvenile detention center awaiting services from Medical Assistance and a place to live from Child Welfare. (*Id*. at ¶ 12). Both S.H. and M.T. have been in the juvenile detention center for more than 200 days waiting for appropriate placement and services. (*Id*.).

Plaintiff N.C. is a fifteen year old boy diagnosed with mental illness and has bounced around foster care and institutions for years while waiting for appropriate placement from DHS. (*Id*. at ¶ 13). He was scheduled to be sent to an out-of-state placement on December 13, 2017 because DHS provided no services or placement in Pennsylvania. (*Id*.). Plaintiff Chrystal Steward, a nineteen year old diagnosed with mental illnesses, is waiting in a psychiatric hospital for placement. (*Id.* at ¶ 14). Although she has been ready for discharge for nearly one year, she has not been discharged because DHS has not given her an appropriate placement. (*Id*.).

Plaintiffs bring three counts against Defendants, on behalf of themselves and others similarly situated. Counts I and II are brought pursuant to 42 U.S.C. § 1983. ("Section 1983"). In Count I, Plaintiffs allege that Defendants have violated Title XIX of the Social Security Act ("Title XIX"), 42 U.S.C. § 1396a(a)(10)(A) and 1396a(a)(43)(C). Title XIX, Section 1396a(a)(10)(A) requires a state plan for medical assistance to "provide for making medical assistance available." Section 1396a(a)(43)(C) requires the state plan to "provide for informing all persons in the State who are under the age of 21 and who have been determined to be eligible for medical assistance . . . of the availability of early and periodic screening, diagnostic, and treatment services." This section also provides for arranging those Early and Periodic Screening, Diagnosis and Treatment ("EPSDT") services.

In Count II, Plaintiffs allege that Defendants have violated Title XIX, Section 1396a(a)(8), which requires a state plan for medical assistance to "provide that all individuals wishing to make application for medical assistance under the plan shall have the opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals." In Count III, Plaintiffs allege that Defendants have violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131(2), Section 504 of the Rehabilitation Act ("Section 504" or "RA"), 29 U.S.C. § 794, and the respective implementing regulations. Plaintiffs allege that the Defendants' policies and practices fail to provide them with mental health services in the most integrated setting appropriate, and fail to afford equal access to other services to achieve stability and permanency based on their disabilities or the severity of their disabilities.

Plaintiffs request that the Court "[i]ssue declaratory relief determining that Defendants' actions and omissions as described above violate Title XIX of the Social Security Act, the ADA, and the RA," "[i]ssue injunctive relief requiring Defendants to develop a full array of appropriate Child Welfare and MA services and placements to meet the needs of children with mental illness and behavior health disabilities in the most integrated settings appropriate to their needs," and "[g]rant such other relief as may be appropriate, including awarding reasonable attorneys' fees and costs." (Doc. 1, pp. 41-42).

Plaintiffs seek to certify the following class: "All Pennsylvania children and youth under the age of 21 who, now or in the future, are adjudicated dependent and have diagnosed mental health disabilities." (Doc. 3).

## II.    LEGAL STANDARD

A federal court may only certify a class for litigation if it determines, after a "rigorous analysis," that the party seeking class certification has met all of the prerequisites of Rule 23. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997); *Beck v. Maximus*, 457 F.3d 291, 297 (3d Cir. 2006)). "Factual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence." *Hydrogen Peroxide*, 552 F.3d at 320. Thus, the "requirements set out in Rule 23 are not mere pleading rules," and the class certification inquiry "requires a thorough examination of the factual and legal allegations." *Id.* at 316; *Newton v. Merrill Lynch, Pierce, Fenner & Smith*, 259 F.3d 154, 166 (3d Cir. 2001). "An overlap between a class certification requirement and the merits of a claim is no reason to decline to resolve relevant disputes when necessary to determine whether a class certification requirement is met." *Hydrogen Peroxide*, 552 F.3d at 316.

To obtain class certification under Rule 23, Plaintiff must satisfy both the conjunctive requirements of subpart (a) and one of the requirements of subpart (b).

FED. R. CIV. P. 23; *In re Schering Plough Corp. ERISA Litigation*, 589 F.3d 585, 596 (3d Cir. 2009). The touchstones of subpart (a) are: "(1) numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical ... of the class'); and (4) adequacy of representation (representatives 'will fairly and adequately protect the interests of the class')." *Amchem Prods*., 521 U.S. at 613. Plaintiffs here seek class certification pursuant to Rule 23(b)(2), which requires a showing that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2).

## III.   DISCUSSION

To start, we make explicit that "Plaintiffs' burden is not to prove the elements of their claim, but to show that those elements are capable of proof through evidence that is common to the class.*" In re Actiq Sales & Mktg. Practices Litig*., 307 F.R.D. 150, 163 (E.D. Pa. 2015). While there is certainly overlap between issues of class certification and the merits of the claims, we only consider disputes on the merits to the extent that they inform upon the certification determination. *Hydrogen Peroxide*, 552 F.3d at 316. Having laid the proper

foundation, we now will consider each requirement of Rule 23 that Plaintiffs must satisfy to attain class certification.

## A. Numerosity

Rule 23 states that numerosity is satisfied when "the class is so numerous that joinder of all members is impracticable." FED R. CIV. P. 23(a)(1). Defendants offer no argument to dispute that Plaintiffs have satisfied the numerosity requirement, and with good reason – our Court of Appeals instructs that "[n]o minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001). Plaintiffs attach two exhibits to demonstrate that the purported class meets the numerosity requirement of Rule 23(a)(1). The first is the Pennsylvania Governor's Executive Budget for 2017-2018, which indicates that there are 23,500 dependent youths in Pennsylvania who live in community residential programs, and 2,850 additional dependent youths in group homes. (Doc. 4, att. 3). The second is an article from the National Conference of State Legislatures from 2016 that indicates that 21.5% of children in foster care suffer from post-traumatic stress disorder and 15.3% suffer from major depressive episodes. (Doc. 4, att. 6). Considering the large size of the putative class, we find that Plaintiffs have satisfied their burden to meet the first prong of Rule 23(a).

**B. Commonality**

"A putative class satisfies Rule 23(a)'s commonality requirement if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013) (internal quotation marks omitted). Plaintiffs list some of the common questions of fact and law applicable to the putative class:

- "whether DHS provides a sufficient array of services and placements through the Child Welfare system to meet the needs of putative class members."

- "whether DHS's Medicaid program fails to provide putative class members with medically necessary mental health services . . . to which they are entitled and do so with reasonable promptness."

- "whether DHS has a policy and/or practice of failing to implement recommendations by treatment professionals that putative class members receive particular Child Welfare and/or Medicaid services."

- "whether DHS has a policy and/or practice of leaving putative class members in RTFs past the point that they are ready for discharge due to the lack of alternative, less restrictive placements."

- "whether DHS has a policy and/or practice of recommending to dependency or delinquency courts that putative class members remain in youth detention centers due to the lack of alternative, less restrictive placements."

- "whether DHS has a policy and/or practice of entering into contracts to send dependent youth with mental health disabilities to out-of-state institutions due to the lack of alternative in-state placements and services."

- "whether DHS's policies and/or practices discriminate against dependent youth with mental health disabilities by denying them equal access to an array of appropriate Child Welfare and Medicaid services that are available to dependent youth without such disabilities."

- "whether DHS's policies and/or practices discriminate against dependent youth with mental health disabilities by failing to provide them with mental health services through the Child Welfare and/or Medicaid systems in the most integrated settings appropriate to meet their needs."

(Doc. 4, pp. 13-15). "Because the [commonality] requirement may be satisfied by a single common issue, it is easily met." *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). Indeed, in *Baby Neal for & by Kanter v. Casey*, the Third Circuit reversed the denial of class certification pursuant to Federal Rule of Civil Procedure 23(b)(2), finding that a putative class of dependent children "who sought declaratory and injunctive relief against the officials responsible for operation of the child welfare system" had satisfied the commonality requirement. *Id*. at 52.

Nonetheless, Defendants argue that the Motion must be denied because the putative class cannot establish commonality. (Doc. 17, pp. 7-15). Regarding factual questions, Defendants argue that the "individualized nature of placement and service decisions for each child in the dependency and delinquency systems makes classwide resolution" impossible. (*Id*. at p. 9). Defendants note that "each county in the Commonwealth is responsible for the operation of children and youth

agencies, which have the power and duty to actually provide child welfare services." (*Id*.). These counties then make placement recommendations to the juvenile court, which then determines the child's placement. (*Id*.). As several of the named plaintiffs have also been adjudicated delinquent, the juvenile probation office also develops recommendations regarding their placement. (*Id*. at p. 10). Because each individual child's placement determination considers highly individualized factors, as well as the recommendations from multiple agencies and the juvenile court, Defendants argue that commonality cannot be satisfied. (*Id*. at p. 11).

The Third Circuit has explicitly considered this argument and rejected it in *Baby Neal* – "[t]o the extent that the defendants assert that commonality requirements cannot be met in this case because of the individualized circumstances of the children, their argument has been squarely rejected by the Supreme Court." 43 F.3d at 57. The Court then cited to *Califano v. Yamasaki*, 442 U.S. 682 (1979), where the Supreme Court noted "class relief is consistent with the need for case-by-case- adjudication." *Califano* 442 U.S. at 701. The Third Circuit went on to emphasize that "[t]his is especially true where plaintiffs request declaratory and injunctive relief against a defendant engaging in a common course of conduct toward them, and there is therefore no need for *individualized* determinations of the propriety of injunctive relief." *Baby Neal*, 43 F.3d at 57

(emphasis in original). So too here, the putative class seeks declaratory and injunctive relief to address systemic deficiencies with the Pennsylvania child welfare program that will not require individualized determinations regarding the putative class members' placements.

In determining whether DHS has policies or practices that fail to provide the members with medically necessary services, there will of course be some factual considerations that are individualized for each member. However, the main question of whether DHS provides a sufficient array of services to meet the needs of dependent children with mental health disabilities or whether DHS has failed to establish contracts to provide for these placements or services are classwide questions of fact. The legal questions that follow – whether these policies or practices violate Title XIX, the ADA, or the RA – are certainly common questions of law for all putative class members.

Defendants argue that commonality cannot be met because the legal conclusions required to resolve the putative class claims will not be common. (Doc. 17, p. 11). The Defendants argue, "Plaintiffs here propose to challenge tens of thousands of placement and service decisions at once." (*Id*. at p. 12). A plain reading of the prayer for relief in the complaint reveals that this is not true. Plaintiffs and the putative class seek a declaration that the Defendants' actions violate Title XIX, the ADA, and the RA, and injunctive relief requiring the

Defendants "to develop a full array of appropriate Child Welfare and MA services and placements to meet the needs of children with mental illness and behavioral health disabilities." (Doc. 1, p. 41). The complaint does not, as Defendants suggest, seek review and determination of each individual class member's placement. Rather, it seeks system wide change. The named Plaintiffs and other putative class members' individualized circumstances serve as examples and evidence of the alleged improper policies and practices of the Defendants. Though the named Plaintiffs would hopefully benefit from the systemic change implemented through injunctive relief, the complaint does not seek individualized review of each member's current placement and needs.

Defendants rely on *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) for their argument against commonality. In 2011, the Supreme Court in *Dukes* reversed certification of a class alleging employment discrimination under Title VII and seeking awards of backpay under Rule 23(b)(2). 564 U.S. at 342. The Court found that class certification was inappropriate because of all of the individualized issues regarding the reason for the employment action taken against the class member, whether they were qualified for their position, and issues of backpay. *Id*. at 353-360. The Court further noted that for a Title VII employment discrimination case, the court would need to look to the employment decisions made by numerous lower level employees, emphasizing that "Respondents have

not identified a common mode of exercising discretion that pervades the entire

company." *Id*. at 356.

Defendants' reliance on *Dukes* is misplaced for two reasons. First, unlike the

putative class in *Dukes*, and as previously discussed, Plaintiffs are not seeking

individualized awards of damages. Rather, they seek injunctive relief that would

require systemic reform of the Child Welfare system. The Court would not need to

consider the placement of each individual class member and whether that

placement was appropriate. Thus, many of the individualized issues that required

consideration in *Dukes* are inapplicable to the instant action. Second, the

employment discrimination claims in *Dukes* required individualized analysis for

each and every alleged employment action predicating the Title VII claims.

Because the putative class in *Dukes* did not assert a company wide practice or

policy that caused each instance of alleged discrimination, the court would need to

look to the specifics of each employment decision as it pertained to that class

member. In the instant action, conversely, Plaintiffs and the putative class allege

that systemic deficiencies in the availability of placements and services cause each

violation of Title XIX, and that the policies and practices for allocating placements

and services in general cause discrimination under the ADA and Section 504. This

is exactly the type of "common mode" or practice predicating each alleged

violation that was noticeably absent from *Dukes*.

14

We find that Plaintiffs and the putative class have adequately satisfied the commonality requirement of Rule 23(a)(2).

## C. Typicality

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(A)(3). The typicality requirement ensures that "the class representatives are sufficiently *similar* to the rest of the class—in terms of their legal claims, factual circumstances, and stake in the litigation—so that certifying those individuals to represent the class will be fair to the rest of the proposed class." *In re Schering Plough Corp. ERISA Litig*., 589 F.3d 585, 597 (3d Cir. 2009). The Third Circuit has offered "three distinct, though related, concerns" to consider in assessing typicality:

> (1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class.

*Id*., at 599.

We note that "[c]omplete factual similarity is not required; just enough factual similarity so that maintaining the class action is reasonably economical and the interests of the other class members will be fairly and adequately protected in

their absence." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d at 598.

"[F]actual differences between the proposed representative and other members of the class do not render the representative atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members." *Id.* (internal quotation omitted). The typicality requirement asks whether "the incentives of the plaintiffs are aligned with those of the class." *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994).

Defendants argue that Plaintiffs cannot establish typicality for the same reasons that they cannot establish commonality – "each putative class member's situation is individualized to such an extent that it could not be considered to have arisen from the same event or course of conduct." (Doc. 17, p. 17). Once again, we reiterate that Plaintiffs and the purported class allege that the violations are due to systemic, rather than individual, failures of the DHS.  For the same reasons that we found that commonality has been met, and in consideration of the "'low threshold' for typicality", we find that Plaintiffs have satisfied their burden of demonstrating typicality for the purported class. *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 428 (3d Cir. 2016), as amended (May 2, 2016), cert. denied sub nom.

### D. Adequacy

Rule 23(a)(4) requires that plaintiffs must "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(A)(4). "Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975). Defendants do not present any argument questioning the adequacy of Plaintiffs' counsel, but argue that the named Plaintiffs are inadequate class representatives.

First, Defendants argue that Plaintiffs cannot meet the adequacy requirement of Rule 23(a)(4) "[f]or the reasons discussed in Section I, explaining why Plaintiffs do not meet the typicality requirement for class certification." (Doc. 17, p. 19). Defendants do not elaborate on this, and because we have found that commonality and typicality are satisfied, this argument is of no moment. Next, Defendants argue that the named Plaintiffs are inadequate class representatives because of three factual differences among them: (1) Plaintiffs purport to represent all age groups under 21 years old, but five of the six are teenagers and two are over the age of 18; (2) Plaintiffs purport to represent dependent children across the Commonwealth, but only represent Philadelphia, Beaver, and York Counties; and (3) four of the six

named plaintiffs have been adjudicated delinquent in addition to dependent. (Doc. 17, p. 19).

We fail to understand how these facts render the Plaintiffs inadequate class representatives, and Defendants have provided no argument or case law to illustrate how these differences could be regarded as "potential conflicts among various members of the class." *Georgine v. Amchem Prod., Inc.*, 83 F.3d 610, 630 (3d Cir. 1996), *aff'd sub nom. Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997). We conclude that "the interests of the named plaintiffs [are] sufficiently aligned with those of the absentees," satisfying the adequacy of representation requirement of Rule 23(a)(4). *Id.*

### E. Rule 23(b)(2)

Having found that Plaintiffs satisfy each requirement of Rule 23(a), we move next to Rule 23(b). Plaintiffs seek class certification pursuant to Rule 23(b)(2), which provides for certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2). "Two showings must therefore be made in order to proceed under Rule 23(b)(2)." *Barabin v. Aramark Corp.*, 210 F.R.D. 152, 160 (E.D. Pa. 2002), *aff'd*, 2003 WL 355417 (3d Cir. Jan. 24, 2003). "First, the complaint must seek relief which is predominantly injunctive or declaratory . . .

[and] [s]econd, plaintiffs must complain that defendants acted or refused to act on grounds generally applicable to the class." *Id*.

A class seeking certification under Rule 23(b)(2) "need not meet the additional predominance and superiority requirements of Rule 23(b)(3),*Gates v. Rohm and Haas Co*., 655 F.3d 255, 263-264 (3d Cir. 2011), but "it is well established that the class claims must be cohesive." *Barnes v. Am. Tobacco Co*., 161 F.3d 127, 143 (3d Cir. 1998). "Indeed, a (b)(2) class may require more cohesiveness than a (b)(3) class." *Id*., at 142. The cohesion requirement is not wholly separate from the previous inquiry, because "when a court determines whether the defendant has acted or refused to act on grounds generally applicable to the class, the court is perforce examining whether the class is cohesive in nature." *Barnes v. American Tobacco Co*., 176 F.R.D. 479, 488 (E.D. Pa. 1997), *aff'd*, 161 F.3d 127 (3d Cir. 1998). "Rather, it is merely another way of stating that a class must be cohesive in order for a court to find that a defendant has acted on grounds generally applicable to the proposed class." *Agostino v. Quest Diagnostics Inc*., 256 F.R.D. 437, 456 (D.N.J. 2009).

Defendants argue that the putative class is inappropriate for certification under Rule 23(b)(2) "for reasons closely related to the lack of commonality." (Doc. 17, p. 20). Defendants argue that "[n]o classwide injunctive relief can be granted" because of the particularized issues involved in each dependent child's case. (*Id*. at

p. 21). Further, Defendants maintain that "[s]uch an inquiry would essentially require the Court to substitute its judgment for that of the many county case managers, social workers, and other professionals who know the children best, and, most important, usurp the function of juvenile court judges across the Commonwealth to determine the disposition best suited to meet each child's needs." (*Id*.).

Once again we must remind Defendants that the Plaintiffs do not seek injunctive relief as it pertains to the specific class members' placements and services. Plaintiffs seek *systemic* changes within the DHS and Child Welfare system that would provide for more placements, more services, prompt placement determinations, and fair allocation of the placements for children with and without mental health disabilities. The complaint seeks relief for the Defendants' actions and omissions that applies generally to the entire class. The prayer for relief specifically seeks an injunction to implement changes in response to alleged failures of the Defendants to provide adequate services to the whole class of dependent children with mental health disabilities. Though we agree with Defendants that, if Plaintiffs are successful, they will need to propose, and the Court would need to fashion, a specific injunction that gives fair notice to Defendants as to what conduct will violate the order, and such construction will be

difficult, we disagree that such an injunction is impossible and find that the requirements of Rule 23(b)(2) are satisfied.

## IV.    CONCLUSION

In light of the foregoing, we shall grant the motion for class certification. Plaintiffs have demonstrated that the putative class meets all requirements of Rule 23(a) and fits within Rule 23(b)(2). Further, judicial economy is served well by certification of the class. The evidence needed to prove the systemic failures and discriminatory impact of the Defendants' practices will be substantially the same for all putative class members. Class certification allows for both parties to conserve resources and efficiently resolve the factual and legal issues presented by the class.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.  Plaintiffs' motion for class certification (Doc. 3) is **GRANTED**.

    a.  The class is hereby defined as follows:

        All Pennsylvania children and youth under the age of 21 who, now or in the future, are adjudicated dependent and have diagnosed mental health disabilities.

    b.  Named Plaintiffs, by their next of friends, are hereby designated as the class representatives.

    c.  Gabriella Labella, Jeni Hergenreder, Kelly Darr, and Shanon Levin from the Disability Rights Network of Pennsylvania, 1315 Walnut

Street, Philadelphia, Pennsylvania, are hereby designated as class

counsel.

2. Within thirty (30) days of the date of this Order, Plaintiffs shall file a motion

for approval of their proposed form of class notice and their notice program.

("Notice Motion"). If the Notice Motion is opposed by any party, that party

shall file a brief in opposition to the Notice Motion no later than fourteen

(14) days after the filing of the Notice Motion.


<u>s/ John E. Jones III</u>
John E. Jones III
U.S. District Judge